**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NATURAL WELLNESS CENTERS
OF AMERICA, INC.,

            Plaintiff,

      v.

J. R. ANDORIN INC., et al.,

            Defendants.
_____/

No. 11-04642 EDL

ORDER DENYING MOTION TO
DISMISS OR TRANSFER VENUE

      Before the Court is Defendant J.R. Andorin Inc.'s motion to dismiss based on improper venue and lack of personal jurisdiction, or to transfer venue. The Court held a hearing on January 17, 2012. For the reasons stated at the hearing and set forth below, the Court denies Defendant's motion.

**BACKGROUND**

      Plaintiff Natural Wellness Centers of America, Inc. ("NWC") is a California corporation with its principal place of business in Laguna Hills, California. Defendant J.R. Andorin ("Andorin") is a New York corporation with its principal place of business in Montgomery, New York. Defendant Natwell, Inc. is a New York corporation with its principal place of business in Bloomingburg, New York. Plaintiff filed a notice of conditional settlement with Defendant Natwell, which has not filed an answer or otherwise responded to the Complaint, and Natwell has been dismissed from this action. Doc. no. 33.

      Plaintiff filed this trademark action on September 19, 2011, alleging that Defendant Andorin violated Plaintiff's trademark rights under federal common law (15 U.S.C. § 1125(a)), committed cyberpiracy (15 U.S.C. § 1125(d)), and violated the California Unfair Competition Law (Cal. Bus. &

United States District Court

For the Northern District of California

Prof. Code § 17200) by using Plaintiff's common law trademarks including

"NATURALWELLNESS.COM" and "NATURAL WELLNESS CENTERS OF AMERICA."

Plaintiff alleges that on September 15, 1999, the predecessor in interest to Plaintiff NWC, Team-

CFS, INC., registered the domain name NATURALWELLNESS.COM and started promoting and

selling nutritional and health supplements products online.  Compl. ¶ 12.  On February 2, 2000,

Team-CFS, Inc. filed a trademark application for the combination design plus words mark NWC

NATURAL WELLNESS CENTERS OF AMERICA.  Compl. ¶ 15.  Team-CFS was merged into

Plaintiff NWC on July 31, 2000.  Compl. ¶ 16.

On September 2, 1996, Andorin obtained a trademark registration for the mark "NATURAL

WELLNESS" for the following goods and services:

> [Class 009] prerecorded educational videos, laser disks, audio cassettes, CDs,
> and computer software all having the subject matter of holistic health,
> integrative medicine, nutritional supplements, alternative healing, personal
> and professional growth and development, personal wellness, spiritual and
> religious issues, psychological counseling, family well-being, education and
> home-schooling issues, lifestyle issues and healthy foods.

> [Class 041] entertainment in the nature of a series of television programs
> dealing with holistic health,  integrative medicine, nutritional supplements,
> alternative healing, personal and professional growth and development,
> personal wellness, spiritual and religious issues, psychological counseling,
> family well-being, education and home-schooling issues, lifestyle issues and
> healthy foods; and educational services, namely, conducting workshops,
> training sessions, seminars and teaching classes in [those subjects], and
> distributing printed materials and prerecorded multimedia materials in
> connection therewith.

> [Class 042] retail store services featuring and mail order catalog services
> featuring audio and video prerecorded cassettes, CDs, laser disks, computer
> software, books, booklets, newsletters, magazines, all having the subject
> matter of holistic health,  integrative medicine, nutritional supplements,
> alternative healing, personal and professional growth and development,
> personal wellness, spiritual and religious issues, psychological counseling,
> family well-being, education and home-schooling issues, lifestyle issues and
> healthy foods; homeopathic remedies, vitamin and mineral nutritional
> supplements, herbs and herbal preparations, sea or land plants, essences and
> extracts, and natural and synthesized substances for medicinal, hygienic and
> beauty care purposes, home decorating accessories, household products,
> educational games and playthings; the rendering of massage, physical
> therapy, hypnotherapy, alternative medicine counseling, and psychological
> counseling services; weekend health spa services; juice bar services and
> healthy food restaurant services.

United States District Court
For the Northern District of California

1    Compl. ¶ 8 and Ex. 1.

2       Plaintiff alleges that it has continuously promoted and sold nutritional and health supplements

3 over the internet through its website, www.naturalwellness.com since 2000.  Compl. ¶ 17.  Plaintiff

4 further alleges that Defendant Andorin registered the domain name "NATURAL-WELLNESS.COM"

5 in 1996, but only sold goods such as software, audio, books and did not list or sell any supplements

6 up to March 8, 2001.  Compl. ¶ 23.  Plaintiff alleges that the first time Andorin sold supplements

7 online was January 19, 2002, based on screenshots archived by The Way Back Machine located at

8 www.archive.org.  Compl. ¶ 25.

9       Plaintiff NWC first became aware of Andorin in 2006 when it received a personal email

10 intended for an Andorin employee.  Compl. ¶ 27.  NWC forwarded the email to Andorin but did not

11 hear directly from Andorin until July 18, 2011, when Andorin filed a complaint with the National

12 Arbitration Forum ("NAF") seeking transfer of the domain name registration

13 "NATURALWELLNESS.COM" to Andorin, pursuant to the Uniform Domain Name Dispute

14 Resolution Policy adopted by the Internet Corporation for Assigned Names and Numbers

15 ("ICANN").  Compl. ¶ 28.  On September 13, 2011, NAF panelist Szamosi issued her decision that

16 Andorin failed to establish all three elements required to transfer a domain name under the ICANN

17 policy.  Compl. ¶ 32 and Ex. 17.  Despite the panel's ruling, Andorin allegedly continues to make

18 unauthorized use of Plaintiff's common law trademarks by displaying and offering health

19 supplements for sale on its websites:

20       www.natural-wellness.com

21       www.naturalwellnessonline.com and

22       http://shop.naturalwellnessonline.com.

23 Compl. ¶¶ 33-34, 39.  Plaintiff seeks damages and injunctive relief.

24       Defendant Andorin now moves to dismiss the Complaint for lack of personal jurisdiction and

25 for improper venue, or, in the alternative, to transfer venue.

26

27

28

**United States District Court**
For the Northern District of California

1    **DISCUSSION**

2    **A.**      **Andorin Is Subject to Specific Personal Jurisdiction in California.**

3       Personal jurisdiction is determined by the applicable state personal jurisdiction statute and

4 constitutional principles of due process.  See Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.

5 2d 1280, 1286 (9th Cir. 1977).  Due process requirements allow California courts to exert personal

6 jurisdiction only where the nonresident defendant has sufficient minimum contacts with the state so

7 that maintenance of the suit does not offend traditional notions of fair play and substantial justice.

8 See, e.g., International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Under the broadly stated

9 jurisdictional rule of International Shoe, California law recognizes two ways that constitutionally

10 sufficient minimum contacts can be shown.  Farris v. Capt. J.B. Fronapfel Co., 182 Cal. App. 3d 982,

11 987 (1986).  First, if the nonresident's activities are "extensive or wide-ranging" or "substantial . . .

12 continuous or systematic," a court may exercise general jurisdiction with respect to any cause of

13 action asserted against a nonresident.  Id. (citations omitted).

14       Second, if pervasive contacts are lacking, due process allows exercise of specific personal

15 jurisdiction when the claim arises out of the nonresident's activities within or affecting the forum

16 state under the following circumstances:

17            (1)      The nonresident defendant must do some act or consummate some
transaction with the forum or perform some act by which he purposefully
18            avails himself of the privilege of conducting activities in the forum, thereby
invoking the benefits and protections of its laws;

19

20            (2)      The claim must be one which arises out of or results from the
defendant's forum-related activities; and

21            (3)      Exercise of jurisdiction must be reasonable.

22 Data Disc, 557 F.2d at 1286; see also Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801

23 (9th Cir. 2004).  Plaintiff bears the burden of establishing that this matter is in the proper forum.  See

24 Data Disc, 557 F.2d at 1285.  If Plaintiff establishes the first two prongs, then the burden shifts to

25 Defendant to present a compelling case that the exercise of specific jurisdiction would not be

26 reasonable.  Schwarzenegger, 374 F.3d at 802.  In this case, Plaintiff contends that the Court has both

27 general and specific personal jurisdiction.

28

### 1.      General Jurisdiction

Plaintiff does not dispute that Andorin is incorporated in the state of New York and has had its principal place of business in New York from 1996 to present.  Cohen Decl. ¶ 4.  Plaintiff contends that the Court has general personal jurisdiction over Andorin based on Andorin's systematic and continuous commercial activities in California such as the following:

- Andorin engages in mail-order business throughout the United States.  See Cohen Decl. ¶ 3 ("Andorin is in the business of selling lifestyle-related educational materials and nutritional products by mail order and through its online store.").

- Andorin operates several active "e-commerce" websites which California residents can access, where they can purchase Andorin's products.  Declaration of John R. Taylor (doc. no. 11-1) ¶ 9 and Ex. A (screen shots from websites).

- Andorin has engaged in continuous promotion of sales of supplements in the United States, Canada and foreign countries.  Compl. ¶ 30 and Ex. 15 (Additional Submission by Andorin in ICANN proceeding) ¶ 8.

- As recently as September 21, 2011, Andorin filled at least one order for health supplements by shipping a product to a paying customer located in Northern California. Taylor Decl. ¶ 20 and Ex. C.

- Andorin has posted testimonials from at least two California customers on its website.  Taylor Decl. ¶ 10 and Ex. B.

- Andorin promotes its products over the internet by citing scientific research conducted by its technical advisor, Dr. Lester Packer, a scientist at a California university. Taylor Decl. ¶ 11.

- Andorin's internet search engine optimization ("SEO") strategy is designed to promote Andorin's products to California residents via internet.

Opp. at 6-7.  Plaintiff also argues that California accounts for 13% of the national gross product.  RJN ¶ 1.  Plaintiff contends that it can safely be assumed that at least 13% of Andorin's domestic sales have been to California residents and that the percentage is likely higher because a larger percentage of California residents use the internet than adults nationwide.  Opp. at 7; RJN ¶ 3.  The Court

**United States District Court**
For the Northern District of California

1  declines to take judicial notice of the economic and statistical evidence proffered by Plaintiff because

2  it has not been properly authenticated and is not capable of accurate and ready determination pursuant

3  to Federal Rule of Evidence 201.  Andorin's objection to the request for judicial notice is overruled

4  as moot.

5        Plaintiff's arguments based on Andorin's internet business activity do not establish

6  "continuous and systematic general business contacts" that would be sufficient to "approximate

7  physical presence" in California to warrant general jurisdiction.  Helicopteros Nacionales de

8  Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,

9  223 F.3d 1082, 1086 (9th Cir.2000).  The maintenance of an interactive business website that can be

10 accessed by California residents is not sufficient to support general jurisdiction.  CollegeSource, Inc.

11 v. AcademyOne, Inc., 653 F.3d 1066, 1075-76 (9th Cir. 2011) (" If the maintenance of an interactive

12 website were sufficient to support general jurisdiction in every forum in which users interacted with

13 the website, 'the eventual demise of all restrictions on the personal jurisdiction of state courts' would

14 be the inevitable result.") (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 294

15 (1980)).  The hiring of a technical advisor in California or obtaining testimonial endorsements from

16 California residents is similarly insufficient.  See Schwarzenegger, 374 F.3d at 801 (acts of hiring

17 California-based marketing company and sales training consultant and maintaining website accessible

18 by California residents were insufficient to support general jurisdiction).  Andorin denies that its

19 search engine strategy is directed at California residents, but Plaintiff's allegation, taken as true, that

20 Andorin's SEO strategy is aimed at California residents, amounts to a marketing strategy that is not

21 in itself sufficient to establish continuous business contacts with California.  CollegeSource, 653 F.3d

22 at 1075 ("Marketing to forum residents, at least where such marketing does not result in substantial

23 and continuous commerce with the forum, does not support general jurisdiction.").

24        Plaintiff therefore fails to establish a prima facie case of general jurisdiction.

25      **2.      Specific Jurisdiction**

26        Plaintiff also contends that the Court has specific jurisdiction over Andorin based on

27 sufficient minimum contacts.  With respect to first prong of the three-part test for specific

28 jurisdiction, in cases sounding in tort, such as a suit for trademark infringement, the Court must

**United States District Court**
For the Northern District of California

1  determine whether the conduct at issue was "purposefully directed" at the forum.  Schwarzenegger,

2  374 F.3d at 803.  "We evaluate purposeful direction under the three-part 'effects' test traceable to the

3  Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984)."  Schwarzenegger, 374 F.3d at

4  803.  The "effects" test requires that the defendant allegedly (1) committed an intentional act, (2)

5  expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered

6  in the forum state.  See id. (citing Dole Food, 303 F.3d at 1111).

7         **a.    Purposeful Direction**

8         Plaintiff contends that Andorin purposefully directed its activities at California residents in

9  several ways:

10         i.    Andorin purchased business insurance to protect itself from lawsuits brought in

11  California, thereby demonstrating that Andorin reasonably anticipated being haled into court in

12  California.  Opp. at 8-9.  Plaintiff does not allege that Andorin purchased insurance designed to cover

13  California in particular and does not offer any authority that purchasing business insurance should

14  lead a defendant to reasonably anticipate being haled into court in any forum that would be covered

15  by the insurance policy.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)

16  ("the foreseeability that is critical to due process analysis is not the mere likelihood that a product

17  will find its way into the forum State. Rather, it is that the defendant's conduct and connection with

18  the forum State are such that he should reasonably anticipate being haled into court there.").  Further,

19  there is always the possibility, as Andorin points out, that the carrier will dispute coverage so that the

20  defendant may not even be insured against the claims.  Reply at 5.  This ground fails to satisfy the

21  purposeful direction requirement.

22         ii.    Andorin instituted the ICANN proceeding to challenge Plaintiff's ownership

23  rights in its trademarks, without any act of provocation or communication by Plaintiff.  Opp. at 9-11.

24  Andorin contends that the ICANN dispute was not purposefully directed at California because the

25  proceedings did not occur in California and had nothing to do with California specifically.  Reply at

26  5.  Andorin contends that it initiated the ICANN proceeding to determine ownership of a domain

27  name against a party that only happened to be located in California, and that it would have instituted

28  the ICANN proceeding irrespective of Plaintiff's location.  Reply at 5.  Under Ninth Circuit

1   authority, however, "the express aiming requirement is satisfied when the defendant is alleged to

2   have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident

3   of the forum state."  CollegeSource, 653 F.3d at 1077 (quotation marks and citations omitted).  In

4   CollegeSource, the Ninth Circuit recognized that "the 'expressly aimed' prong of the purposeful

5   direction test can be met where a plaintiff alleges that the defendant individually targeted him by

6   misusing his intellectual property on the defendant's website for the purpose of competing with the

7   plaintiff in the forum."  Id. (quotation marks and citations omitted).  Here, Andorin does not contend

8   that it was unaware of Plaintiff's place of business in California, and by instituting ICANN

9   proceedings against Plaintiff over the ownership of the NATURALWELLNESS.COM domain name,

10  Andorin targeted its allegedly wrongful conduct at a party known to be a resident of California.

11              iii.    Andorin intentionally committed acts that caused injuries within California,

12  such as infringing Plaintiff's common law trademark rights by selling health supplements over the

13  internet from 2002, attempting to hijack Plaintiff's domain name by instituting a bad-faith ICANN

14  proceeding, causing Plaintiff to suffer damages including the costs of defending the ICANN

15  proceeding, and threatening trademark infringement against Plaintiff.  Opp. at 11-12.  Andorin

16  contends that it did not act intentionally to cause any effect on Plaintiff and that "[t]here is no

17  evidence to support Plaintiff's claim that Andorin intentionally infringed Plaintiff's alleged common

18  law trademarks or that Andorin filed the ICANN action in bad faith."  Reply at 6.  For purposes of

19  Plaintiff's prima facie jurisdictional showing, however, the Court takes Plaintiff's allegations as true

20  and concludes that the alleged misconduct in bringing the ICANN proceeding inflicted harm "that the

21  defendant knows is likely to be suffered in the forum state."  Brayton Purcell, 606 F.3d at 1128

22  (citation omitted).  See CollegeSource, 653 F.3d at 1079 ("a corporation incurs economic loss, for

23  jurisdictional purposes, in the forum of its principal place of business").

24              iv.    Andorin knowingly caused an effect in the forum state by unauthorized use of

25  Plaintiff's trademark.  Opp. at 12-13.  Plaintiff cites Cable/Home Comm'n Corp. v. Network Prods,

26  Inc., 902 F.2d 829, 858 (11th Cir. 1990) (analyzing jursidiction under Florida long-arm statute) and

27  Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 219 (1st 1989) (applying Massachusetts long-

28  arm statute) to support Plaintiff's contention that "[l]ocal jurisdiction will usually be upheld in

1   copyright and trademark cases if the nonresident defendant knowingly caused an effect in the forum

2   state." Opp. at 12. Neither decision established such a broad proposition, but rather determined

3   whether the plaintiff had alleged sufficient facts to establish jurisdiction under the applicable long-

4   arm statutes. Allegations of trademark infringement alone are not sufficient to establish specific

5   jurisdiction.

6        v.    Andorin's acts of cyberpiracy of Plaintiff's domain name, or "cyber-squatting"

7   for a tortious purpose such as to extort money from the trademark owner, subject Andorin to

8   jurisdiction in a trademark infringement where the trademark owner is located. Opp. at 13 (citing

9   Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998)). In Panavision, the court

10  recognized that "simply registering someone else's trademark as a domain name and posting a web

11  site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in

12  another." 141 F.3d at 1322. The court held that "there must be 'something more' to demonstrate that

13  the defendant directed his activity toward the forum state." Id. (citation omitted). The court

14  determined there that the allegations that Toeppen engaged in a scheme to register Panavision's

15  trademarks as his domain names for the purpose of extorting money from Panavision were sufficient

16  to satisfy the purposeful availment requirement. "Pursuant to that scheme, he demanded $13,000

17  from Panavision to release the domain names to it. His acts were aimed at Panavision in California,

18  and caused it to suffer injury there." Id. at 1318. As Andorin points out, however, Plaintiff has not

19  alleged that Andorin has attempted to extort money and mere allegations of cyberpiracy, without

20  "something more," do not meet the effects test for purposeful direction. See Pebble Beach Co. v.

21  Caddy, 453 F.3d 1151, 1158 (9th Cir. 2006) ("[T]here can be no doubt that we still require

22  'something more' than just a foreseeable effect to conclude that personal jurisdiction is proper. . . .

23  [A]n internet domain name and passive website alone are not 'something more,' and, therefore, alone

24  are not enough to subject a party to jurisdiction.")).

25       vi.    Andorin "admittedly utilizes and does business systematically and

26  continuously over the internet and ships its products into California to California residents via at least

27  4 websites." Opp. at 13-14. As discussed above, Andorin's use of interactive websites is not

28

United States District Court

For the Northern District of California

1   sufficient to subject Andorin to personal jurisdiction in California.  See CollegeSource, 653 F.3d at

2   1075-76.

3       Of the various grounds offered by Plaintiff to support specific jurisdiction, only the

4   allegations that Andorin instituted a bad-faith ICANN proceeding and caused Plaintiff to suffer

5   damages including the costs of defending the ICANN proceeding are sufficient to support the

6   purposeful direction requirement.

7           **b.    Claims Arising Out of, or Related to, Forum-Related Activities**

8       Andorin contends that the ICANN proceeding is unrelated to this action which alleges

9   trademark infringement, cyberpiracy and unfair competition.  This lawsuit does not dispute the

10  findings of the ICANN proceeding, given the favorable ruling for Plaintiff, but seeks relief related to

11  Plaintiff's claim that Andorin has violated Plaintiff's common law trademarks.  Reply at 5.  Plaintiff

12  contends, however, that it was "unfairly and without provocation forced to defend its 12-year old

13  domain name" in the frivolous ICANN proceeding.  Opp. at 11.  The Complaint expressly alleges that

14  "ANDORIN has no rights in the domain name NATURALWELLNESS.COM, as clearly stated in the

15  ICANN UDRP decision," and that "ANDORIN's ICANN UDRP Complaint was filed with the intent

16  to interfere with NWC's COMMON LAW TRADEMARKS and sales of INFRINGED PRODUCTS

17  over the internet."  Compl. ¶ 48.  The Complaint sufficiently alleges that Andorin's forum-related

18  activity, i.e., instituting the ICANN proceeding against Plaintiff, is related to the claims.

19          **c.    Reasonableness**

20      Because Plaintiff has met the first two prongs of the test for specific jurisdiction, the burden

21  shifts to Defendant to present a compelling case that the exercise of specific jurisdiction would not be

22  reasonable.  Schwarzenegger, 374 F.3d at 802.  In determining whether the exercise of jurisdiction

23  comports with "fair play and substantial justice" and is therefore reasonable, the Court considers

24  seven factors:

25          (1) the extent of the defendants' purposeful injection into the forum state's
            affairs; (2) the burden on the defendant of defending in the forum; (3) the
26          extent of the conflict with the sovereignty of the defendant's state; (4) the
            forum state's interest in adjudicating the dispute; (5) the most efficient
27          judicial resolution of the controversy; (6) the importance of the forum to the
            plaintiff's interest in convenient and effective relief; and (7) the existence of
28          an alternative forum.

1    CollegeSource, 653 F.3d at 1079 (citation omitted).

2         The purposeful injection factor has been met because the Court has determined that Andorin

3    purposefully directed its actions at California.  CollegeSource, 653 F.3d at 1080 ("Actions directed at

4    a forum resident expected to cause harm in the forum constitute purposeful injection.").  As to the

5    second factor, Andorin contends that defending this action in this Court would cause a burden

6    because all of its directors, officers, and employees are in New York.  As to the third and fourth

7    factors relating to the forum state's interest, Andorin contends that New York has a strong interest,

8    but acknowledges that "California may have an interest in providing a forum for the plaintiff to sue."

9    Mot. at 12.  As to the fifth factor, Andorin contends that the evidence and witnesses are located in

10   New York so that New York would be a more efficient forum, addressing the seventh factor, the

11   existence of an alternative forum.  With respect to the sixth factor, Andorin argues that any interest

12   that Plaintiff has in this forum is outweighed by the availability of an alternative forum.  Mot. at 13.

13   Andorin contends that exercising jurisdiction here would be unreasonable because Andorin acted in

14   good faith when filing its ICANN claim and that the ICANN claim did not require Plaintiff to defend

15   itself in an unreasonable forum because the matter was decided on the briefs.  Reply at 5-6.  On the

16   present motion to dismiss, however, Plaintiff's allegations that Andorin filed the ICANN proceeding

17   to interfere with Plaintiff's trademark rights are taken as true.

18        Andorin has not demonstrated that the exercise of jurisdiction in this case would be

19   unreasonable.  Therefore, the motion to dismiss for lack of personal jurisdiction is denied.

20   **B.        Venue Is Proper in This District.**

21        In federal question cases, venue is proper in the following districts: (1) if all Defendants

22   reside in the same state, a district where any defendant resides; (2) a district in which a substantial

23   part of the events or omissions on which the claim is based occurred; or (3) if there is no district in

24   which the action may otherwise be brought, the district in which any defendant may be found.  28

25   U.S.C. § 1391(b).  The Complaint alleges that venue is proper in this district on the ground that this is

26   the district in which a substantial part of the events giving rise to the claim occurred.  Compl. ¶ 3.

27   Plaintiff also contends that venue is proper here because Defendant's services and related products

28

**United States District Court**
For the Northern District of California

1    are available in California and over the internet and sold within the Northern District of California

2    regularly and on a systematic basis.  Id.

3           A party may bring a motion asking the court to dismiss the action for improper venue

4    pursuant to Federal Rule of Civil Procedure 12(b)(3).  When venue is improper, the court "shall

5    dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it

6    could have been brought."  28 U.S.C. § 1406(a).  It is Plaintiff's burden to show that venue is proper.

7    See Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979) ("Plaintiff

8    had the burden of showing that venue was properly laid in the Northern District of California.").  On

9    a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), "the pleadings need not be

10   accepted as true, and the court may consider facts outside of the pleadings." Murphy v. Schneider

11   National, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004) (citations omitted).  Dismissal, rather than

12   transfer, may be appropriate where the transfer would be futile because the case would be dismissed

13   even after transfer.  See Altin Havayolu Tasamaciligi Turizm Ve Tic v. Sinnarajah, 2008 WL 691851,

14   *5 (N.D. Cal. 2008) (citing King v. Russell, 963 F.2d 1301, 1304 (9th Cir.1992)).

15          Defendant argues that the Complaint fails to set forth a legitimate basis for bringing this case

16   in this district.  Andorin resides in New York, is not licensed to do business in California, has no

17   offices or employees in California, does not own or lease any property in California, does not have a

18   bank account in California, does not pay taxes in California, and has never sued or been sued in

19   California.  Reply at 2.  First, Andorin contends that this district is an improper venue because

20   Andorin is not subject to personal jurisdiction here.  Because that issue has been decided in favor of

21   jurisdiction, Andorin argues in the alternative that California is an inconvenient forum and seeks

22   transfer to New York as the more convenient forum pursuant to 28 U.S.C. § 1404.  If the Court

23   determines that transfer to New York is not appropriate, Andorin seeks transfer to the Central District

24   of California.  Reply at 9-10.

25          Plaintiff argues that the Northern District is the appropriate venue pursuant to 28 U.S.C.

26   § 1391 (b)(2) because a "substantial part of the operative events giving rise to its claims" occurred in

27   this district.  See Rodriguez v. California Highway Patrol, 89 F. Supp. 2d 1131, 1136 (N.D. Cal.

28   2008).  Plaintiff contends that "a substantial part of the events did take place in California."  Opp. at

United States District Court
For the Northern District of California

1   14.  Plaintiff argues that about 500 of its customers are located in this district, that its long-standing

2   vendors and consultants are located here, and that Defendant's use of Plaintiff's name has a

3   significant impact on its customers, suppliers and consultants here.  Defendant Andorin does not

4   dispute that Plaintiff has customers, suppliers and consultants in this district.  Although venue would

5   be proper in the Central District of California, where Plaintiff is located, and in New York, where

6   Defendant is located, Plaintiff has sufficiently demonstrated that venue is also proper in this district.

7   **C.      Convenience Factors Do Not Outweigh Plaintiff's Choice of Forum.**

8            Under § 1404(a), the court has discretion to order transfer "[f]or the convenience of parties

9   and witnesses, in the interest of justice, a district court may transfer any civil action to any other

10  district or division where it might have been brought."  Determining whether an action should be

11  transferred pursuant to § 1404(a) is a two-step process.  The transferor court must first determine

12  whether the action "might have been brought" in the transferee court, and then the court must make

13  an "individualized, case-by-case consideration of convenience and fairness."  Inherent.com v.

14  Martindale-Hubbell, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (citing Hatch v. Reliance Ins. Co.,

15  758 F.2d 409, 414 (9th Cir. 1985)); Jones v. GNC Franchising, 211 F.3d 495, 498 (9th Cir. 2000)).

16  The burden is on the defendant to show that transfer is appropriate.  See Commodity Futures Trading

17  Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir.1979).

18           Andorin does not specify which judicial district in New York would be the more convenient

19  forum for this litigation, although Plaintiff does not appear to dispute that this action might have been

20  brought under 28 U.S.C. § 1391(b)(1) in a district court in New York because Defendant resides

21  there.  See 28 U.S.C. § 1391(b) ("A civil action wherein jurisdiction is not founded solely on

22  diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides,

23  if all defendants reside in the same State . . .").  Thus, the first prong of the § 1404(a) analysis is met.

24           As to the second prong of the 1404(a) analysis, the plain language of the statute requires the

25  Court to consider at least three factors in deciding whether to transfer a claim to another court: (1)

26  convenience of parties; (2) convenience of witnesses; and (3) in the interest of justice.  Ninth Circuit

27  precedent requires that courts also weigh the plaintiff's choice of forum.  See Securities Investor Prot.

28

United States District Court
For the Northern District of California

1  Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir.1985).  In determining the convenience of the parties

2  and witnesses and the interests of justice, a court may consider a number of factors including:

> (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the
> convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each
> forum with applicable law; (6) feasibility of consolidation of other claims; (7) any
> local interest in the controversy; and (8) the relative court congestion and time of
> trial in each forum.

6  Gerin v. Aegon USA, Inc., 2007 WL 1033472, at *4 (N.D. Cal., April 4, 2007) (citing Jones v. GNC

7  Franchising, 211 F.3d 495, 498-99 (9th Cir. 2000)).

8      In the usual case, unless the balance of the § 1404(a) factors weighs heavily in favor of the

9  defendants, "the plaintiff's choice of forum should rarely be disturbed."  Securities Investor, 764 F.2d

10  at 1317; see also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986)

11  ("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum").

12  However, "[i]f the operative facts have not occurred within the forum of original selection and that

13  forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled

14  only to minimal consideration."  Pacific Car and Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir.

15  1968).

16      Subsequent district court opinions have, however, stated the standard in the disjunctive: "The

17  degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the

18  plaintiff's venue choice is not its residence or where the forum chosen lacks a significant connection

19  to the activities alleged in the complaint."  See, e.g., Fabus Corp. v. Asiana Express Corp., 2001 WL

20  253185, at *1 (N.D. Cal. March 5, 2001); Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D.

21  Cal. 2001) (citing Fabus, 2001 WL 253185, at *1).  However, transfer should be denied where it

22  would "merely shift rather than eliminate the inconvenience."  Decker Coal, 805 F.2d at 843.

23          **1.     Plaintiff's choice of forum**

24      Unless the balance of the Section 1404(a) factors weighs heavily in favor of the defendants,

25  "the plaintiff's choice of forum should rarely be disturbed."  Securities Investors, 764 F.2d at 1317;

26  see also Decker Coal Co., 805 F.2d at 843 ("defendant must make a strong showing . . . to warrant

27  upsetting the plaintiff's choice of forum").  This is especially true when a plaintiff chooses to sue in

28  its "home turf."  See Warfield v. Gardner, 346 F. Supp. 2d 1033, 1044 (D. Ariz. 2004) (plaintiff's

1  choice of "home forum is to be given substantial deference"); <u>Ravelo Monegro v. Rosa</u>, 211 F.3d

2  509, 513 (9th Cir. 2000) (referring to the "strong presumption in favor of a domestic plaintiff's forum

3  choice."); <u>Chrysler Corp. v. Woehling</u>, 663 F. Supp. 478, 482 (D. Del. 1987) ("This is so because the

4  plaintiff is the founder of the suit and his choice of forum must be a 'paramount consideration' in

5  determining a motion to transfer.  However, when the plaintiff chooses a forum which has no

6  connection to himself or the subject matter of the suit, and is thus not his 'home turf,' the burden on

7  the defendant is reduced and it is easier for the defendant to show that the balance of convenience

8  favors transfer.") (internal citation omitted).

9         The deference accorded to a plaintiff's chosen forum should be balanced against both the

10  extent of a defendant's contacts with the chosen forum and a plaintiff's contacts, including those

11  relating to a plaintiff's cause of action.  <u>See</u> <u>Pacific Car and Foundry Co. v. Pence</u>, 403 F.2d 949, 954

12  (9th Cir.1968). "If the operative facts have not occurred within the forum of original selection and

13  that forum has no particular interest in the parties or the subject matter, [a] plaintiff's choice is only

14  entitled to minimal consideration." <u>Id.</u>

15        Plaintiff asserts that it chose this forum, even though it does not reside in this district, because

16  it has significant contacts with Northern California, including customers, distributors, marketing

17  partners, legal department, consultants and R&D activities.  Opp. at 18, 20-21.  Although Plaintiff

18  concedes that the location of its counsel does not figure into the venue analysis, <u>see</u> <u>Williams v.</u>

19  <u>Granitie Constr. Co.</u>, 2009 U.S. Dist. LEXIS 10756, at *1-2 (N.D. Cal. Feb. 3, 2009), Plaintiff argues

20  that the Court should give deference to its forum of choice.  Plaintiff has shown that it has some

21  contacts in this district, and on balance, the convenience factors do not favor transfer to either the

22  Central District of California or New York, particularly where Plaintiff does not state a preference for

23  the Central District of California as more convenient than its choice of forum.

24              **2.      Convenience of the parties**

25        None of the parties are located in this district.  Plaintiff's managers, a husband and wife, are

26  located in the Central District of California.  Although it might appear that it would be more

27  convenient for Plaintiff to litigate in that district, Defendant argues that the convenience of the parties

28  favors New York because all of its officers and employees are there, and none reside in California.

United States District Court

For the Northern District of California

1    Plaintiff opposes transfer to New York because it would shift the burden of out-of-state litigation

2    from Andorin to Plaintiff.  Plaintiff points out that because none of Defendant's witnesses are located

3    in California, there is no added convenience to Defendant in transferring venue to the Central District

4    of California.  Defense counsel indicated at the hearing that Plaintiff's managing agents are located

5    within miles of defense counsel's offices.  However, Plaintiff's counsel stated that their depositions

6    could be taken at defense counsel's offices in the Central District of California, which would

7    minimize any inconvenience or added cost to Defendant.  The convenience to parties weighs only

8    slightly in favor of transfer to either the Central District of California or New York, but is neutral

9    between those alternatives.

10                    **3.        Convenience of the witnesses**

11                The convenience of the witnesses "is often the most important factor considered by the court

12   when deciding a motion to transfer for convenience."  Steelcase v. Haworth, 41 U.S.P.Q. 2d 1468,

13   1470 (C.D. Cal. 1996); see also Kannar v. Alticor, Inc., 2009 U.S. Dist. LEXIS 35091, *4 (N.D. Cal.

14   Apr. 9, 2009).  The primary consideration is for the convenience of third party witnesses, and not

15   employee witnesses.  See Royal Queentex Enters. v. Sara Lee Corp., 2000 U.S. Dist. LEXIS 10139,

16   at *6 (N.D. Cal. Mar. 1, 2000).  Additionally, the Court should consider "not only the number of

17   witnesses located in the respective districts, but also the nature and quality of their testimony in

18   relationship to the issues in the case."  Kannar, 2009 U.S. Dist. LEXIS 35091, at *5 (quoting

19   Steelcase, 41 U.S.P.Q. 2d at 1470).

20                Andorin argues that all of its employees who might need to be deposed reside in New York,

21   and that no known witnesses reside in the Northern District of California.  Mot. at 17.  Plaintiff

22   argues that Northern California would be more convenient for its witnesses, other than Plaintiff's

23   employees who reside in Southern California.  See Taylor Decl. ¶ 21.  Plaintiff names two non-

24   employee witnesses in Northern California (a trademark consultant and raw materials supplier), and

25   expects to call unnamed customers as witnesses.  Id.

26                It appears that this district would be the more convenient venue for some of Plaintiff's

27   witnesses and that transfer to New York would simply shift the burden of travel from Defendant and

28   its employees to Plaintiff's witnesses.  This factor weighs against transfer out of this district.

**United States District Court**
For the Northern District of California

1

         **4.**      **Ease of access to evidence**

2

      Presumably, Plaintiff's evidence is located in California and Defendant's evidence is located

3 in New York.  The parties do not contend that this is a significant factor, which is essentially neutral

4 given the ability to electronically transfer documents or otherwise transfer documents easily.

5

         **5.**      **Familiarity of forum with applicable law**

6

      This factor is neutral.  The district courts in California and New York are equally familiar

7 with the area of trademark law.

8

         **6.**      **Feasibility of consolidation with other claims**

9

      The parties do not address this factor and it does not appear to be relevant in this case.

10

         **7.**      **Local interests in the controversy**

11

      Neither party presents a strong argument that its respective home state has a particular local

12 interest in this controversy, other than each state's interest in regulating or protecting its corporations.

13

         **8.**      **Relative court congestion and time of trial**

14

      Defendant contends that "California courts are extremely congested," Reply at 9, but does not

15 demonstrate that the district courts of New York are significantly less congested or that this factor

16 favors transfer to the Central District of California.

17

         **9.**      **Other factors**

18

      Plaintiff indicates that it offered to stipulate to transfer to the Central District of California,

19 and that Andorin refused.  Plaintiff makes clear, though, that this district is its preferred forum.  Opp.

20 at 22.  Now that Plaintiff has expended time and resources in opposing Defendant's motion to

21 transfer venue, Plaintiff seeks deference to its choice of forum.

22

      On balance, Defendant has not demonstrated that the convenience factors warrant disturbing

23 Plaintiff's choice of forum.

24 **CONCLUSION**

25

      Defendant's motion to dismiss or, in the alternative, to transfer venue is DENIED.

26 **IT IS SO ORDERED.**

27 Dated: January 24, 2012

28

                             _Elizabeth D. Laporte_
                             ELIZABETH D. LAPORTE
                             United States Magistrate Judge