# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JULIA JUNGE and RICHARD JUNGE, on behalf of themselves and a class of similarly situated investors,<br><br>           Plaintiffs,<br><br>   v.<br><br>GERON CORPORATION and JOHN A. SCARLETT,<br><br>           Defendants. | Case No. 3:20-cv-00547-WHA<br><br>CLASS ACTION<br><br>(Consolidated with Case No. 3:20-cv-01163-WHA) |

**EXPERT REBUTTAL REPORT OF CHAD COFFMAN, CFA**

**November 4, 2021**

2

## Table of Contents

**Page**

I.  INTRODUCTION....................................................................................................... 3

II.  THE STANDARD OUT OF POCKET DAMAGES METHODOLOGY IS
    FLEXIBLE ENOUGH TO ACCOMMODATE ALL OF DR. STULZ'S
    CONCERNS ............................................................................................................... 4

   A.  CONSTANT DOLLAR, CONSTANT PERCENTAGE, OR ANOTHER BACK
       CASTING PROCEDURE CAN BE APPROPRIATELY APPLIED .................... 6

   B.  MATERIALIZATION OF RISK ................................................................................ 8

   C.  SEPARATING CONFOUNDING FROM CORRECTIVE INFORMATION IS
       COMMON TO ALL SECURITIES FRAUD LITIGATION .............................. 16

## I.   INTRODUCTION

1.   On September 30, 2021 I submitted an expert report (the "Coffman Report" or my "Report") in this matter, in which I opined on the efficiency of the market for Geron Corporation ("Geron" or the "Company") Common Stock.[1]  In my Report, I concluded that the market for Geron Common Stock was efficient throughout the Class Period and that damages in this matter are subject to a common approach and a methodology that can be applied class-wide.[2]

2.   Following the submission of my Report, counsel for Lead Plaintiffs provided me with a copy of the October 21, 2021 Expert Report of René M. Stulz, Ph.D. (the "Stulz Report") submitted by Defendants in support of Defendants' Opposition to Lead Plaintiffs' Motion For Class Certification.  I have been asked by counsel for Lead Plaintiffs to review and respond to Dr. Stulz's contention that I have not demonstrated that there is a methodology that can reliably measure class-wide damages consistent with Plaintiffs' allegations in this matter.[3]  I do not raise any new points that could have been addressed in my Report.  My responses to the Stulz Report are set forth in this document (my "Rebuttal Report").

3.   In formulating my opinions set forth in this Rebuttal Report, I have relied upon the analysis already described in my prior Report; my knowledge, experience, and formal training in economics, finance, and statistics; and the allegations and facts presented in this lawsuit.  I also have considered: (1) the Stulz Report; (2) sworn testimony from Dr. Stulz in a deposition taken on October 29, 2021 by counsel for Lead Plaintiffs (the "Stulz Deposition")[4]; (3) my sworn

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings given to them in the Coffman Report.  Throughout this report the term "efficiency" refers to "semi-strong market efficiency" as defined in the Coffman Report (¶¶ 18 – 19).

[2] Coffman Report ¶¶ 6 – 7.  The putative Class Period is from March 19, 2018 through September 26, 2018.

[3] Stulz Report ¶ 24.

[4] Deposition of René M. Stulz, Ph.D, *Junge, et al. vs. Geron Corporation, et al.*, No. 3:20-cv-00547-WHA, October 29, 2021.

testimony in a deposition taken on October 15, 2021 by counsel for Defendants (the "Coffman Deposition") and (4) other relevant materials and information.  The materials I have relied upon and considered in reaching my opinions in this Rebuttal Report are identified in the attached **Appendix A**, which are in addition to the materials I identified in Appendix A to my prior Report.

4.    My qualifications and rate of compensation for work in this matter were identified in my prior Report and I do not repeat them here.  I have attached an updated version of my *curriculum vitae* as **Appendix B**.

5.    I reserve the right to amend this Rebuttal Report to reflect new information that becomes available to me, including from the discovery process and/or future rulings of the Court.

6.    In summary, nothing in the Stulz Report or in the Stulz Deposition disturbs my opinions that the market for Geron Common Stock was efficient during the Class Period and that economic damages in this matter can be calculated on a class-wide basis based on a common approach and methodology consistent with Plaintiffs' theory of liability.

## II.    THE STANDARD OUT OF POCKET DAMAGES METHODOLOGY IS FLEXIBLE ENOUGH TO ACCOMMODATE ALL OF DR. STULZ'S CONCERNS

7.    As set forth below, nothing in the Stulz Report alters my conclusion that the out-of-pocket damages framework is appropriate for this securities class action and that this framework is sufficiently flexible to address any of Dr. Stulz's hypothetical questions if they in fact prove relevant only once the factual record has been fully developed. The out-of-pocket method I described in my Report, without the specification of how to determine artificial inflation per share, has been accepted as a "methodology" in numerous cases I have provided testimony for in which classes have been certified throughout the country. By contrast, Dr. Stulz has not cited any

4

authority to suggest that identifying the out-of-pocket method was not a sufficient "methodology" at the class certification stage. Indeed, Dr. Stulz conceded at his deposition that after artificial inflation per share has been determined, that inflation could be used to calculate damages under the out of pocket method.[5]

8.    The Stulz Report asserts that it raises questions that purportedly render my damages framework and the use of an event study inapplicable regardless of whether one were to apply constant percentage, constant dollar, or some other approach.[6] To the contrary, as I describe below, those questions are common to the Class, require a loss causation analysis to address, and require a more fully developed factual record than is available at Class Certification.

9.    To summarize, the Stulz Report identifies no special circumstances in this case that divorce it from the many other securities fraud cases in which courts have deemed the out-of-pocket damages framework appropriate at Class Certification. What Dr. Stulz describes as special circumstances have nothing to do with the general fit of my damages framework to Plaintiffs' liability theory, but are simply run-of-the-mill circumstances that may later implicate the precise amount of damages caused by Defendants' misconduct and which can be applied using a class-wide approach. Further, the out-of-pocket damages framework and event studies regularly and effectively address these loss causation questions at the merits stage.

---

[5] *See* Stulz Deposition at 202:4-14 ("Q: And once you determine how much inflation goes away per share, that could be used to determine damages on a class-wide basis under the out-of-pocket method, right? A. If you were able to determine how much inflation there is throughout the class period and how much inflation there is after the alleged curative disclosures, then you would be able to do the calculation required by the out-of-pocket measure. The whole challenge here is to figure out what the inflation is."). As I understand it, the "challenge" Dr. Stulz refers to is calculating artificial inflation per share relating to the alleged fraud, which is part of a detailed loss causation analysis and is determined at the merits stage of the litigation.

[6] Stulz Report n. 43, 54.

## A. CONSTANT DOLLAR, CONSTANT PERCENTAGE, OR ANOTHER BACK CASTING PROCEDURE CAN BE APPROPRIATELY APPLIED

10. Dr. Stulz does not dispute that the damages framework detailed in the Coffman Report (¶¶ 79-84), which is based on out of pocket damages, is applied in virtually every securities fraud class action.[7] Instead, he attacks the supposed applicability of that framework to the facts of this case by suggesting that the circumstances in this matter are so unique as to render the general out of pocket damages framework outlined in my Report insufficient to address Plaintiffs' theory of liability.[8] Specifically, he states that there is "difficulty in calculating artificial inflation… based solely on price declines following the alleged corrective disclosure" due to the fact that "Geron's stock price decline in the aftermath of the corrective disclosure exceeds Geron's stock price earlier in the proposed Class Period."[9]

11. Nowhere does my Report claim that I intend to use a constant dollar approach to back cast artificial inflation in this case. Dr. Stulz essentially acknowledges this when he writes that "[t]he Coffman Report similarly does not specify how Mr. Coffman would measure inflation over time…Thus, I also assume for the purposes of this report that he is proposing such a 'constant dollar inflation' approach to calculating damages in this case."[10] In fact, my Report only mentions "constant dollar" in the context of a future hypothetical loss causation analysis, which I understand is not relevant at this stage of litigation.[11] My report likewise acknowledges

---

[7] There have been extremely rare situations where counsel for plaintiffs has articulated an alternative damages theory that departs from the out of pocket approach or where event study methodologies did not serve as the primary basis for evaluating the inflation per share. That is not the case here.

[8] Stulz Report ¶ 34

[9] Stulz Report ¶ 36.

[10] Stulz Report n. 43.

[11] Coffman Report ¶ 83.

6

that another inflation methodology might be appropriate.[12] Dr. Stulz's argument rests on a flawed claim that I would assume constant dollar inflation, when I have made no such assumption, and the determination of the most appropriate back casting method is not necessary at this stage of the litigation and requires a detailed loss causation analysis.[13]

12.    Further, Dr. Stulz recognizes in a footnote that there are other means of back-casting the artificial inflation calculated by an event study besides using a constant dollar approach, including using a "constant percentage" approach.[14] Notably, he does not assert that using a constant percentage approach would result in irrationally low prices of Geron's Common Stock, but maintains that, in this case, constant percentage "is not a viable alternative."[15]

13.    Dr. Stulz's concern that my damages methodology is not sufficiently "tailored to the unique circumstances" of this case does not change my conclusions that damages can be calculated on a class-wide basis using a common methodology.[16] Additionally, Dr. Stulz does not provide an affirmative opinion as to what back casting methodology would be appropriate in this case, or himself perform an analysis of artificial inflation.  Dr. Stulz made clear at his deposition that he has no opinion whether the constant percentage back-casting method can be applied in this case.[17]

---

[12] Coffman Report ¶ 83.

[13] Stulz Report ¶ 31 n. 43.

[14] Stulz Report ¶ 39 n. 54.

[15] Stulz Report ¶ 39 n. 54.

[16] Coffman Report ¶ 7, 85.

[17] Stulz Deposition at 177:24-178:6 ("Q. Just going back to the backcasting concept for a moment, is it your affirmative opinion that a constant percentage backcasting method cannot be applied in this matter? A. Now whether it can be applied or not would require further investigation. I was not asked to have an opinion as to whether it can be applied or not.")

14.     Furthermore, the only criticism of the constant percentage method articulated by Dr. Stulz is that it would have to address all of the disaggregation/loss causation issues he raises (and which I address below).  In fact, in cases where the price of the relevant security increased substantially during the Class Period, use of a constant percentage inflation methodology is more conservative.

15.     Determining how to most properly back-cast the inflation revealed on the corrective disclosure is an issue in nearly every certified class action securities litigation. Furthermore, it may be greatly influenced by information learned in discovery.  As I explained during my deposition, there have been prior matters in which information learned in discovery directly impacted the approach to back-casting inflation, but the out-of-pocket methodology can accommodate any of these back-casting approaches.[18]

16.     The record in this matter has not been fully developed and the precise approach to back-casting inflation will be dependent on the facts, assumptions given to a damages expert by counsel based on their conclusions from discovery, and a loss causation analysis. Further, even if it turns out through merits discovery that true economic inflation was not constant (in terms of dollars, percentage or otherwise) over the Class Period, the out-of-pocket damages model outlined in my Report can account for such a circumstance and mechanically calculate damages on a class-wide basis.

## B.  MATERIALIZATION OF RISK

17.     Dr. Stulz argues that I have not explained how the damages methodology I presented in my Report can account for changes in artificial inflation due to potential changes in, and uncertainty about the perceived risk that Janssen would terminate the partnership, which was

---

[18] Coffman Deposition at 114:24 – 117:16, and 236:13-237:15.

not confirmed until the alleged corrective disclosure event.[19]  However, Dr. Stulz's argument is

flawed because: (1) Plaintiffs' theory of liability, in whole or in part, is not premised on the

"materialization of risk" as characterized by Dr. Stulz; (2) even if it were, this is a question of

loss causation; and (3) regardless, the damages model described in my Report is flexible enough

to incorporate the materialization of risk.

18.    In my Report, I described Plaintiffs' claims, which allege that Defendants misled

investors about the results of the IMBark study.[20]  More specifically, the allegations that the

Court in this case found actionable at this stage are that Defendants made false and misleading

statements and omissions regarding the IMBark study's results on Total Symptom Score ("TSS")

and remission.[21]  When Dr. Stulz describes his understanding of Plaintiffs' theory of liability, he

inaccurately portrays the allegations as they relate to the materialization of risk.  Specifically, Dr.

Stulz claims the following:

> I understand that Plaintiffs' remaining liability theories center on
> alleged misrepresentations regarding overall TSS and remission
> data from the IMbark study. Yet Mr. Coffman has not tried to assess
> or address key issues that a damages methodology for this matter
> must account for to be consistent with, and tailored to, these
> remaining theories of liability: There was uncertainty throughout the
> proposed Class Period (including, notably, to Geron) regarding
> whether or not Janssen would terminate the CLA, and investors
> knew throughout the proposed Class Period that there was a chance
> Janssen *could* terminate the CLA. Thus, the disclosure on
> September 27, 2018, that Janssen was terminating the CLA
> represents materialization of a risk that was, at most, allegedly
> understated throughout the proposed Class Period….Furthermore,
> Mr. Coffman also fails to acknowledge the additional complexity
> that, as I understand from counsel, *only the concealed degree of risk*
> *stemming from the IMbark TSS and remission results* (and ***not*** any
> concealed degree of risk stemming from SVR results, other trial
> results, IMerge, or Janssen's independent portfolio evaluation, all of

---

[19] Stulz Report ¶¶ 41 – 42 and § VI.B.

[20] Coffman Report ¶¶ 14.

[21] Order Re Motion to Dismiss, ECF No. 124, p. 8-9.

which were conveyed simultaneously in the alleged corrective disclosure on September 27, 2018, along with the TSS and remission results) is part of Plaintiffs' remaining theories of liability in light of the MTD Order.[22]

19. It is wrong for Dr. Stulz to frame Plaintiffs as alleging that the fraud in this case is Defendants' failure to disclose a hypothetical risk that eventually transpired at a later date. Plaintiffs allege that Defendants failed to disclose the material, adverse TSS and remission data of the IMBark study.[23] Indeed, I understand that Plaintiffs expect to prove that as of the time they made their statements, beginning with the first day of the Class Period, Defendants knew or recklessly disregarded the truth about the IMBark's study's data, and could have, but did not, disclose those then-existing, present facts to investors.[24]

20. Based on his misunderstanding of Plaintiffs' claims, Dr. Stulz raises merits-stage arguments and criticizes the damages methodology described in my Report. First, Dr. Stulz argues that the assumptions necessary to assume that artificial inflation was constant over the Class Period do not hold here because "[a]n analysis of 'artificial inflation' throughout the proposed Class Period would, therefore, need to juxtapose what the market's presumed probability of termination was at each point in time against the purportedly 'true' yet allegedly concealed probability of termination at each point of the proposed Class Period."[25]

21. In making this claim, Dr. Stulz is essentially arguing that I would need to account for time-varying artificial inflation over the Class Period, that is, I would need to consider whether it is appropriate to assume that the economic impact of the information released on the alleged corrective disclosures would have been the same had the relevant truth concealed by the

---

[22] Stulz Report ¶ 34 (emphasis in original).

[23] Complaint ¶ 120.

[24] Complaint ¶ 120.

[25] Stulz Report ¶¶ 43-45.

alleged fraud been disclosed at earlier points in the Class Period.  As an initial matter, because Dr. Stulz's opinion stems from his flawed mischaracterization of Plaintiffs' claims, the rest of his argument is flawed.

22. Regardless, even if Dr. Stulz's characterization of Plaintiffs' theory of liability were correct, and artificial inflation in this case should be, at least in part, calculated by measuring the impact of but-for disclosures of hypothetical risks (like the risk that Janssen might terminate the partnership), it would not preclude a damages expert from being able to quantify artificial inflation throughout the Class Period for Geron Common Stock and measure damages on a class-wide basis at the merits stage. I agree with Dr. Stulz that a reliable estimate of artificial inflation must consider the information content of hypothetical but-for disclosures and the total mix of information already available to investors. However, whether and to what extent the market would have anticipated Janssen's decision to terminate the partnership based on an earlier revelation of the IMBark study results is a question that requires a detailed loss causation analysis.

23. I discussed at length above in Section II.A how, in determining the appropriate assumption for the evolution of artificial inflation, the relevant inputs depend on the facts and evidence that existed and were concealed and what could and should have been disclosed at different points in time.  This is the essence of what the parties investigate during discovery and what the finder of fact is asked to ultimately determine.  The role of a damages expert is to assist the finder of fact in determining artificial inflation/damages based upon those findings.  It is premature to specify these details before conducting a loss causation analysis that considers information learned in merits discovery.  Who knew what, when they knew it, and what could and should have been disclosed are at the heart of what the finder of fact is asked to ultimately

11

resolve based upon evidence presented by the parties after the completion of discovery. It is premature at the class certification stage to: (1) speculate that the evidence will show something different from what Plaintiffs allege, or (2) attempt to specify how these details would hypothetically impact Plaintiffs' quantification of artificial inflation without actually knowing what the evidence will show.

24.    In any event, even if it turns out through merits discovery that true economic artificial inflation was not constant over the Class Period, the out-of-pocket method outlined in my Report can account for such a circumstance and mechanically calculate damages on a class-wide basis.

25.    For example, assume an event study analysis determines that there was a $10.00 decline in the share price attributable to the fraud[26] as a result of corrective information being released. Under a constant dollar back-casting methodology, such a finding would imply that $10.00 per share of artificial inflation existed on each day of the class period prior to this corrective disclosure. Now assume that the evidence obtained in discovery suggests that only half of the corrective information, or $5.00 per share, could have been disclosed for the first month of the class period. In that case, purchasers during the first month of the class period who held through the corrective disclosure would have purchased shares with $5.00 of artificial inflation (50% of $10.00) whereas shares purchased after the first month contained the full $10.00 of artificial inflation per share. Similarly, I described how artificial inflation can evolve and be accounted for over time in my deposition.[27]

---

[26] I address the potential impact of confounding information below in Section II.C.

[27] Coffman Deposition at 115:23-116:13.

26.    The same formula set out in my Report (artificial inflation at the time of purchase *minus* artificial inflation at the time of sale) still results in the appropriate assessment of damages.  This example shows that the artificial inflation need not be constant over time for the out-of-pocket damages methodology to be applied class-wide.  Further, this example demonstrates that even if Dr. Stulz were correct that a portion of Plaintiffs' theory of liability is materialization of risk, the out-of-pocket damages model can incorporate the changing economic impact of information at different points during the Class Period.  No matter how the finder of fact weighs the evidence, whether it determines that artificial inflation was constant over the Class Period, or 90% or 50% of the full amount of artificial inflation was present in Geron Common Stock at certain points in the Class Period, the result can easily be applied to any daily artificial inflation table that would accompany a loss causation report after merits discovery is complete.  In other words, regardless of what the fact finder decides, the methodology for calculating damages will remain the same and apply equally to each Class member.  Furthermore, if the finder of fact determines that the economic impact of a hypothetical disclosure was $0 as of a certain date, the out-of-pocket model could also easily handle this outcome on a class-wide basis by assigning 0% artificial inflation to the relevant time period.

27.    Even if Dr. Stulz's description of Plaintiffs' theory of liability were correct, I am not aware of any evidence that would preclude a damages expert from being able to use an event study and other valuation techniques outlined in my Report to measure artificial inflation, and Dr. Stulz does not present any such evidence.[28]  What Dr. Stulz describes as special

---

[28] As I stated during my deposition, I have not been asked to evaluate loss causation, and therefore I have not identified or committed to the specific method or methods that I would use to measure artificial inflation per share for each day in the Class Period.  *See, e.g.*, Coffman Deposition 117:22 – 117:25, and 224:10 – 15. When asked in my deposition, "If you were asked to calculate damages in this case, would you 100 percent use an event study to calculate artificial inflation?", I testified, "I think it's hard to imagine it not being an input in some level." *See* Coffman Deposition 222:3 – 8.

13

circumstances have nothing to do with the general fit of my damages framework to Plaintiffs' liability theory, but are simply run-of-the-mill circumstances that may later implicate the precise amount of damages caused by Defendants' misconduct and which can be applied using a class-wide approach. Regardless of which approach, or combination of approaches, is ultimately used as the loss causation input (*i.e.*, artificial inflation) to the out-of-pocket damages model, the formula to calculate class-wide damages will be mechanical, the proof will be common to the Class, and the results will apply class-wide.

28.   Dr. Stulz also argues that I have not established how I would account for the potential changing economic impact of information over time in a damages analysis with regard to changes in the market's perceived likelihood that Janssen would terminate their CLA with Geron.[29]  In particular, Dr. Stulz claims:

> There are reasons to believe that the market's assessment of termination probability likely changed over time during the proposed Class Period. For example, on August 24, 2018, Geron's stock price increased 28.8%, from $4.03 to $5.19. This increase occurred after the posting of a "European Medicines Agency (EMEA) Strategic Pricing Manager" job position by Johnson & Johnson. This position apparently would have been responsible for setting the price for imetelstat. This information could have altered the market's presumed probability of CLA termination. For example, all else equal, market participants could have interpreted the job posting as signaling that Janssen was more likely to continue the CLA.[30]

29.   Again, Dr. Stulz's concern amounts to speculation that the economic impact of hypothetical but-for disclosures may have been different earlier in the Class Period, which would impact the evolution of artificial inflation throughout the Class Period.  Indeed, Dr. Stulz points

---

[29] Geron entered into a Collaboration and Licensing Agreement ("CLA") with Janssen in November 2014. *See,* Coffman Report ¶ 13.

[30] Stulz Report ¶ 48.

to a variety of potential changing economic conditions that Geron faced during the Class Period, such as Janssen's independent portfolio evaluation, IMerge efficacy results, and other factors unrelated to Plaintiffs' remaining theory of liability.[31]  Even if Geron faced changing market assessments of the probability that Janssen would terminate their CLA, for example, the question of whether this would cause a hypothetical but-for disclosure of the relevant truth to have a different economic impact earlier in the Class Period requires a detailed loss causation analysis. In Section II.A. above, I discussed the evolution of artificial inflation at length, and noted in particular that it is dealt with at the loss causation stage and that regardless, the out-of-pocket method is flexible enough to incorporate different findings related to the evolution of artificial inflation.  For the same reasons described above, Dr. Stulz's concerns about my damages methodology do not disturb my opinions and Dr. Stulz's claim that I fail to provide a sufficiently detailed damages analysis to encompass "what the market's expectation *would have been* 'but-for' the alleged misrepresentations" is both premature and irrelevant at the class certification stage.[32]

30.    As a result of the foregoing, none of Dr. Stulz's arguments related to the materialization of risk disturb my opinions because they rely on a mischaracterization of Plaintiffs' theory of liability, are related to issues that are dealt with at the loss causation stage of litigation, and nonetheless can still be incorporated into the out-of-pocket damages formula I presented in my Report.

---

[31] Stulz Report ¶ 47.

[32] Stulz Report ¶ 46 (emphasis in original).

### C. SEPARATING CONFOUNDING FROM CORRECTIVE INFORMATION IS COMMON TO ALL SECURITIES FRAUD LITIGATION

31.    Dr. Stulz does not challenge my opinion that any estimate of artificial inflation in this matter would appropriately involve an event study specifically designed to assess the degree of price movement at the time of the alleged corrective disclosure.[33] Instead, Dr. Stulz notes that such an analysis would need to also address any potential confounding information, which he claims exists on the alleged corrective disclosure date and would require further analysis than an event study alone to determine artificial inflation.[34] This is a loss causation issue ubiquitous in securities litigation which can be addressed on a class-wide basis. As Dr. Stulz himself acknowledges, such a loss causation analysis, which is highly fact dependent, is not required at this stage.[35]

32.    However, Dr. Stulz does state that I am required to explain how to parse out corrective from confounding information at this stage to "isolate" the artificial inflation attributable to Plaintiffs' actionable claims.[36] It is my understanding and experience that this is

---

[33] Dr. Stulz incorrectly asserts that the ultimate event window used in a loss causation analysis is dictated by the methodology I employ to analyze market efficiency. In particular, he states that "[g]iven Mr. Coffman's opinion about market efficiency and reliance on single-day event study results elsewhere in his report, it would be inappropriate to use a two-day decline. In an efficient market, security prices rapidly incorporate new information. The allegedly corrective news came out before the market opened on September 27, 2018, and thus in an efficient market would be expected to be incorporated into Geron's stock price that day; Mr. Coffman has not demonstrated otherwise." (Stulz Report n. 49). The precise determination of the appropriate event window to consider (i.e. single day, two day or some other event window) in a loss causation analysis will be dependent upon further analysis of the facts. Additionally, it is not unusual for the market to take more than a day to fully impound corrective information. The use of two-day event windows is observed widely in the literature. See, for example, Tabak, David, et. al., "Determination of the Appropriate Event Window Length in Individual Stock Event Studies," NERA Economic Consulting, November 4, 2003 and A. Craig MacKinlay, "Event Studies in Economics and Finance," Journal of Economic Literature 35, no. 1 (March 1997): pp. 13 – 39 ("It is customary to define the event window to be larger than the specific period of interest. This permits examination of periods surrounding the event. In practice, the period of interest is often expanded to multiple days, including at least the day of the announcement and the day after the announcement.").

[34] Stulz Report ¶¶ 32, 34.

[35] Stulz Report ¶ 35 ("Importantly, I am not claiming that Mr. Coffman should actually measure or calculate damages at this point, nor am I faulting him for not conducting a loss causation analysis.")

[36] Stulz Report ¶ 35, 47.

incorrect. Determining both the precise proportion of a price decline following a corrective

disclosure that is due to corrective versus confounding factors, and the precise methodology that

will accomplish this, requires a detailed loss causation analysis that may depend on information

revealed in merits discovery. My understanding is that loss causation (including disaggregation)

need not be proven at class certification as a matter of law.[37] Regardless, such a loss causation

analysis would apply in the same manner for all class members and would be dependent on the

same proof on a class-wide basis.

33.   For example, Dr. Stulz notes that my methodology would need to account for

several factors, including that simultaneous with the corrective disclosure, information was

released which is not part of Plaintiffs' remaining theories of liability.[38] However, even if such

an analysis were necessary, it would be done on a class-wide basis and may be informed by

information learned in discovery.

34.   Dr. Stulz essentially calls for a detailed loss causation analysis which will likely

rely greatly upon the level of detail that can only be obtained through discovery.  However, his

explanation does not require an abandonment of the well accepted out of pocket damages

methodology.  For example, if an analysis of the information released on September 27, 2018

implied that 20% of the stock price decline on the corrective disclosure was due to factors

unrelated to the alleged fraud, then such an adjustment could mechanically be made to the

artificial inflation and the out-of-pocket model would still apply.  Such concerns and issues are

ubiquitous in securities fraud cases and typically addressed during merits discovery.

---

[37] *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2183 (2011). (holding that securities fraud plaintiffs need not prove loss causation in order to obtain class certification).

[38] Stulz Report ¶ 34.

35. To the extent there was other information released on the corrective disclosure date that contributed to the losses that were not causally related to the allegations, I agree that such confounding information should be excluded. However, evaluating the degree to which that confounding information should be disaggregated from the artificial inflation is a loss causation concern, and does not impact the ability for the methodology to be common to the class. The Stulz Report's discussion here is simply another way of stating that there is a need to disaggregate losses attributable to corrective information from confounding information (including what Dr. Stulz characterizes as the information no longer actionable based on the Court's order), and that the artificial inflation per share in the standard damages model should reflect the value of the concealed information and not the value of information that was disclosed. This concern is ubiquitous in class action securities cases and there is nothing unique or novel about the claims in this matter in this regard.

36. There are many possible ways one might disaggregate the information on the alleged corrective disclosure date. This is clearly an issue of fact that would need to be considered as part of any loss causation analysis. Dr. Stulz, however, is suggesting that such an analysis can be designed and/or performed without regard to what evidence may become available in discovery. To provide one on the present record would be speculation because it is not entirely clear how the facts will be developed or what information will be available to Plaintiffs' loss causation expert at the merits stage. In any event, while disaggregation of some of the issues Dr. Stulz raises may be necessary, if it is indeed so, the standard damages model can readily incorporate such issues.

37. What is important at class certification is that, regardless of how the fact-finder ultimately determines the appropriate percentage of a stock price decline attributable to

18

corrective versus confounding information, that percentage can be incorporated easily and mechanically into the standard out-of-pocket formula. Confounding information merely impacts the level of per-share damages class members may be entitled to, which would ultimately be decided on a class-wide basis. For example, assume that an event study analysis determines that there was a $1.00 decline in the share price as a result of corrective information being released. Further assume there was some non-culpable (*i.e.*, "non-corrective" or "confounding") information released at the same time, and that plaintiffs present a loss causation analysis that suggests 80% of the price movement, or $0.80 per share, is due to the corrective information. For ease of exposition, under a constant dollar back-casting methodology, that would imply that $0.80 per share of artificial inflation existed on each day of the Class Period before this corrective disclosure. No matter how the finder of fact weighs the evidence, whether they agree with 80% or determine that based upon weighing the evidence it is some other percentage, the result can easily be applied to any daily inflation table that would accompany a loss causation report after merits discovery is complete – that is, it can be converted to a per-share inflation on each day of a given Class Period.

38.    I further understand that an actual class-wide damages calculation conducted during the merits phase of the litigation needs only to be "reasonable" as opposed to calculated with absolute mathematical precision. Furthermore, I am not aware of any securities class action case in which out-of-pocket damages could not be calculated during the merits phase of the litigation solely due to the difficulty of disaggregation between corrective and confounding information. In any event, even if Dr. Stulz were to provide a loss causation opinion after merits discovery that disaggregation is impossible on the corrective event in this case, the out-of-pocket model could

19

easily handle that outcome on a class-wide basis by assigning 0% inflation as a result of the alleged newly disclosed corrective information.

39.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Chad Coffman

Executed on November 4, 2021.

20

# Appendix A
# Documents Considered

**<u>Prior Reports and Depositions in this Matter</u>**

- Market Efficiency Report of Chad Coffman, CFA, dated September 30, 2021, including all data and all documents included in the Appendices of that report.
- Deposition of Chad Coffman, October 15, 2021.
- Expert Report of René M. Stulz, Ph.D., dated October 21, 2021.
- Deposition of René M. Stulz, Ph.D., dated October 29, 2021.

**<u>Court Documents</u>**

- Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws filed October 22, 2020, Case No. 3:20-cv-00547-WHA.
- Order RE Motion To Dismiss Amended Consolidated Class Action Complaint And Requests For Judicial Notice filed April 12, 2021, No. C 20-00547 WHA.

**<u>Court Decisions and Securities Law</u>**

- *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2183 (2011).

**<u>Academic Literature</u>**

- A. Craig MacKinlay, "Event Studies in Economics and Finance," Journal of Economic Literature 35, no. 1 (March 1997).
- Tabak, David, et. al., "Determination of the Appropriate Event Window Length in Individual Stock Event Studies," NERA Economic Consulting, November 4, 2003.

# Appendix B

## CHAD W. COFFMAN, MPP, CFA

Global Economics Group, LLC
140 South Dearborn Street, Suite 1000
Chicago, IL 60603
Office:          (312) 470-6500
Mobile:          (815) 382-0092
Email:           ccoffman@globaleconomicsgroup.com

## EMPLOYMENT:

### Global Economics Group, LLC
President (2008 - Current)

Global Economics Group specializes in the application of economics, finance, statistics, and valuation principles to questions that arise in a variety of contexts, including litigation and policy matters throughout the world. With offices in Chicago, Boston, and New York, Principals of Global Economics Group have extensive experience in high-profile securities, antitrust, labor, and intellectual property matters.

### Market Platform Dynamics, LLC
Chief Financial Officer & Chief Operating Officer (2010 – Current)

Market Platform Dynamics is a management consulting firm that specializes in assisting platform-based companies profit from industry disruption caused by the introduction of new technologies, new business models and/or new competitive threats.  MPD's experts include economists, econometricians, product development specialists, strategic marketers and recognized thought leaders who apply cutting-edge research to the practical problems of building and running a profitable business.

### Chicago Partners, LLC
Principal (2007 – 2008)
Vice President (2003 – 2007)
Director (2000 – 2003)
Senior Associate (1999 – 2000)
Associate (1997 – 1999)
Research Analyst (1995 – 1997)

## EDUCATION:

**CFA**     Chartered Financial Analyst, 2003

**M.P.P.**  University of Chicago, 1997
Masters of Public Policy, with a focus in economics including coursework in Finance, Labor Economics, Econometrics, and Regulation

**B.A.**    Knox College, 1995
Economics, Magna Cum Laude
Graduated with College Honors for Paper entitled "Increasing Efficiency in Water Supply Pricing:  Using Galesburg, Illinois as a Case Study"
Dean's List Every Term
Phi Beta Kappa

## PROFESSIONAL EXPERIENCE:

Securities, Valuation, and Market Manipulation Cases:

- Testifying Expert in numerous high-profile class action securities matters including, but not limited to:

  o In Re: Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation.  Parties settled for $2.4 billion in which I served as Plaintiffs' damages and loss causation expert.
  o In Re: Schering-Plough Corporation/ Enhance Securities Litigation. Parties settled for $473 million in which I served as Plaintiffs' damages and loss causation expert.
  o In Re: REFCO Inc. Securities Litigation. Parties settled for $367 million in which I served as Plaintiffs' damages and loss causation expert.
  o In Re: Computer Sciences Corporation Securities Litigation. Parties settled for $98 million in which I served as Plaintiffs' damages and loss causation expert.
  o Full list of testimonial experience is provided below

- Engaged several dozen times as a neutral expert by prominent mediators to evaluate economic analyses of other experts.

- Expert consultant for the American Stock Exchange (AMEX) where I evaluated issues related to multiple listing of options.  Performed econometric analysis of various measures of option spread using tens of millions of trades.

- Performed detailed audit of CDO valuation models employed by a banking institution to satisfy regulators – non-litigation matter.

- Played significant role in highly-publicized internal accounting investigations of two Fortune 500 companies.  One led to restatement of previously issued financial statements and both involved SEC investigations.

## Testimony:

- Testifying expert in the matter of Kuo, Steven Wu v. Xceedium Inc, Supreme Court of New York, County of New York, Index No. 06-100836.  Filed report re: the fair value of Mr. Kuo's shares. Case settled at trial.

- Testifying expert in the matter of <u>Pallas, Dennis H. v. BPRS/Chestnut Venture Limited Partnership and Gerald Nudo, Circuit Court of Cook County, Illinois, County Department, Chancery Division</u>. Filed report re: fair value of Pallas shares.  Report: July 9, 2008. Deposition August 6, 2008. Court Testimony February 11, 2009.

- Testifying expert in <u>Washington Mutual Securities Litigation, United States District Court for the Western District of Washington at Seattle, No. 2:08-md-1919 MJP, Lead Case No. C08-387 MJP</u>. Filed declaration August 5, 2008 re: Plaintiffs' loss causation theory.  Filed expert report April 30, 2010.  Filed expert rebuttal report August 4, 2010.  Filed declaration re: Plan of Allocation September 25, 2011**.**

- Testifying expert in <u>DVI Securities Litigation, Case No. 2:03-CV-05336-LDD, United States District Court for the Eastern District of Pennsylvania</u>. Filed expert report October 1, 2008 re: damages. Filed expert rebuttal report December 17, 2008. Deposition January 27, 2009. Filed expert rebuttal report June 24, 2013.

- Testifying expert in <u>Syratech Corporation v. Lifetime Brands, Inc. and Syratech Acquisition Corporation, Supreme Court of the State of New York, Index No. 603568/2007</u>. Filed expert report October 31, 2008.

- Expert declaration in <u>Jacksonville Police and Fire Pension Fund, et al. v. AIG, Inc., et al., No. 08-CV-4772-LTS; James Connolly, et al. v. AIG, Inc., et al., No. 08-CV-5072-LTS; Maine Public Employees Retirement System, et al. v. AIG, Inc., et al., No. 08-CV-5464-LTS; and Ontario Teachers' Pension Plan Board, et al. v. AIG, Inc., et al., No. 08-CV-5560-LTS, United States District Court for the Southern District of New York</u>. Filed declaration February 18, 2009.

- Expert declaration in <u>Connetics Securities Litigation, Case No. C 07-02940 SI, United States District Court for the Northern District of California, San Francisco Division</u>. Filed expert report March 16, 2009.  Filed declaration re: Plan of Allocation September 9, 2009**.**

- Testifying expert in <u>Boston Scientific Securities Litigation, Master File No. 1:05-cv-11934 (DPW), United States District Court District of Massachusetts</u>.  Filed expert report August 6, 2009. Deposition October 6, 2009.

- Expert declaration in <u>Louisiana Sheriffs' Pension and Relief Fund, et al. v. Merrill Lynch & Co, Inc., et al., Case Number 08-cv-09063, United States District Court for the Southern District of New York</u>. Filed declaration re: Plan of Allocation October, 2009.

- Testifying expert in <u>Henry J. Wojtunik v. Joseph P. Kealy, John F. Kealy, Jerry A. Kleven, Richard J. Seminoff, John P. Stephen, C. James Jensen, John P. Morbeck, Terry W. Beiriger, and Anthony T. Baumann</u>. Filed expert report January 25, 2010.

- Testifying expert in <u>REFCO Inc. Securities Litigation, Case No. 05 Civ. 8626 (GEL), United States District Court for the Southern District of New York</u>. Filed expert report February 2, 2010. Filed expert rebuttal report March 12, 2010. Deposition March 26, 2010.

- Expert declaration in <u>New Century Securities Litigation, Case No. 07-cv-00931-DDP, United States District Court Central District of California</u>. Filed declaration March 11, 2010.

- Testifying expert in <u>Louisiana Municipal Police Employees' Retirement System, et al. v. Tilman J. Fertitta, Steven L. Scheinthal, Kenneth Brimmer, Michael S. Chadwick, Michael Richmond, Joe Max Taylor, Fertitta Holdings, Inc., Fertitta Acquisition Co., Richard Liem, Fertitta Group, Inc. and Fertitta Merger Co, C.A. No. 4339-VCL, Court of Chancery of the State of Delaware</u>. Filed expert report April 23, 2010.

- Testifying expert in <u>Edward E. Graham and William C. Nordlund, individually and d/b/a Silver King Capital Management v. Eton Park Capital Management, L.P., Eton Park Associates, L.P. and Eton Park Fund, L.P. Case No. 1:07-CV-8375-GBD, Circuit Court of Shelby County, Alabama</u>. Filed expert rebuttal report July 8, 2010.  Deposition September 1, 2010. Filed supplemental expert rebuttal report August 22, 2011.

- Testifying expert in <u>Moody's Corporation Securities Litigation. Case No. 1:07-CV-8375-GBD, United States District Court for the Southern District of New York</u>.  Filed expert rebuttal report August 23, 2010. Deposition October 7, 2010. Filed rebuttal reply report November 5, 2010. Filed expert report May 25, 2012.

- Testifying expert in <u>Minneapolis Firefighters' Relief Association v. Medtronic, Inc., et al. Civil No. 08-6324 (PAM/AJB), United States District Court, District of Minnesota</u>. Filed expert report January 14, 2011.

- Testifying expert in <u>Schering-Plough Corporation/ENHANCE Securities Litigation Case No.2:08-cv-00397 (DMC) (JAD), United States District Court, District of New Jersey</u>. Filed declaration February 7, 2011. Filed expert report September 15, 2011. Filed expert rebuttal report October 28, 2011. Filed declaration January 30, 2012. Deposition November 15, 2011 and November 29, 2011.

- Testifying expert in <u>Fannie Mae 2008 Securities Litigation, Master File No. 08 Civ. 7831 (PAC), United States District Court for the Southern District of New York</u>. Filed expert report July 18, 2011.

- Expert declaration in <u>Grady Scott Weston et. al v. RCS Capital Corporation, et. al, Civil Action No. 1:14-CV-10136-GBD, United States District Court for the Southern District of New York</u>. Filed declaration re: aggregate damages August 11, 2017.

- Testifying expert in <u>Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation, Master File No. 09 MDL 2058 (PKC), United States District Court for the Southern District of New York</u>.  Filed expert report August 29, 2011. Filed expert rebuttal report September 26, 2011. Filed expert report March 16, 2012. Filed expert rebuttal report April 9, 2012. Filed expert rebuttal report April 29, 2012. Deposition October 14, 2011 and May 24, 2012.

- Testifying expert in <u>Toyota Motor Corporation Securities Litigation, Case No. 10-922 DSF (AJWx), United States District Court, Central District of California</u>. Filed expert report February

17, 2012. Deposition March 28, 2012. Filed expert rebuttal report August 2, 2012. Filed declaration re: Plan of Allocation January 28, 2013.

- Testifying expert in The West Virginia Investment Management Board and the West Virginia Consolidated Public Retirement Board v. The Variable Annuity Life Insurance Company, Civil No. 09-C-2104, Circuit Court of Kanawha County, West Virginia. Filed expert report June 1, 2012. Depositions June 19, 2013 and December 11, 2015.

- Testifying expert in Aracruz Celulose S.A. Securities Litigation, Case No. 08-23317-CIV-LENARD, United States District Court for the Southern District of Florida. Filed expert report July 20, 2012. Deposition September 14, 2012. Filed expert rebuttal report October 29, 2012. Filed declaration re: Plan of Allocation May 20, 2013.

- Testifying expert in In Re Computer Sciences Corporation Securities Litigation, CIV. A. No. 1:11-cv-610-TSE-IDD, United States District Court for the Eastern District of Virginia, Alexandria Division. Filed expert report November 9, 2012. Filed supplemental report February 18, 2013. Filed expert rebuttal report March 25, 2013. Deposition March 27, 2013. Filed declaration re: Plan of Allocation August 7, 2013.

- Testifying expert in In Re Weatherford International Securities Litigation, Case 1:11-cv-01646-LAK, United States District Court for the Southern District of New York. Filed declaration July 1, 2011. Filed expert report April 1, 2013. Deposition April 26, 2013.

- Testifying expert in In Re: Regions Morgan Keegan Closed-End Fund Litigation, Case 2:07-cv-02830-SHM-dkv, United States District Court for the Western District of Tennessee, Western Division. Court testimony April 12, 2013.

- Testifying expert in City of Roseville Employees' Retirement System and Southeastern Pennsylvania Transportation Authority, derivatively on behalf of Oracle Corporation, Plaintiff, v. Lawrence J. Ellison, Jeffrey S. Berg, H. Raymond Bingham, Michael J. Boskin, Safra A. Catz, Bruce R. Chizen, George H. Conrades, Hector Garcia-Molina, Donald L. Lucas, and Naomi O. Seligman, Defendants, and Oracle Corporation, Nominal Defendant, C.A. No. 6900-CS, Court of Chancery of the State of Delaware. Filed expert report May 13, 2013. Filed expert rebuttal report June 21, 2013. Deposition July 17, 2013.

- Testifying expert in In Re BP plc Securities Litigation, No. 4:10-md-02185, Honorable Keith P. Ellison, United States District Court for the Southern District of Texas, Houston Division. Filed expert report June 14, 2013. Deposition July 25, 2013. Filed expert rebuttal report October 7, 2013. Filed declaration re: Plaintiff accounting losses November 17, 2013. Filed expert report January 6, 2014. Deposition January 22, 2014. Filed expert rebuttal report March 12, 2014. Filed expert report March 17, 2014. Hearing testimony April 21, 2014. Deposition June 3, 2014. Filed declaration re: damages June 3, 2014.

- Testifying expert in In Re Celestica Inc. Securities Litigation, Civil Action No. 07-CV-00312-GBD, United States District Court for the Southern District of New York. Filed expert report June 14, 2013. Filed expert rebuttal report September 10, 2013. Deposition September 24, 2013.

- Testifying expert in <u>In Re Dendreon Corporation Class Action Litigation, Master Docket No. C11-01291JLR, United States District Court for the Western District of Washington at Seattle</u>. Filed declaration re: Plan of Allocation June 14, 2013.

- Testifying expert in <u>In Re Hill v. State Street Corporation, Master Docket No. 09-cv12146-GAO, United States District Court for the District of Massachusetts</u>. Filed expert report October 28, 2013.

- Testifying expert in <u>In Re BNP Paribas Mortgage Corporation and BNP Paribas v. Bank of America, N.A., Master Docket No. 09-cv-9783-RWS, United States District Court for the Southern District of New York</u>. Filed expert report November 25, 2013. Filed expert rebuttal report March 17, 2014. Deposition June 26-27, 2014.

- Testifying expert in <u>Stan Better and YRC Investors Group v. YRC Worldwide Inc., William D. Zollars, Michael Smid, Timothy A. Wicks and Stephen L. Bruffet, Civil Action No. 11-2072-KHV, United States District Court for the District of Kansas</u>. Filed declaration re: Plan of Allocation February 5, 2014. Filed expert report May 29, 2015. Filed expert report February 5, 2016. Filed expert rebuttal report March 27, 2016.

- Testifying expert in <u>The Archdiocese of Milwaukee Supporting Fund v. Halliburton Company, et al., Civil Action No. 3:02-CV-1152-M, United States District Court for the Northern District of Texas, Dallas Division</u>. Filed expert rebuttal report October 30, 2014. Deposition November 11, 2014. Hearing testimony December 1, 2014. Filed expert report March 11, 2016. Filed expert rebuttal report May 13, 2016. Deposition June 10, 2016. Hearing testimony re: Plan of Allocation July 31, 2017.

- Testifying expert in <u>In Re HP Securities Litigation, Master File No. 3:12-cv-05980-CRB, United States District Court for the Northern District of California, San Francisco Division</u>. Filed expert report November 4, 2014. Deposition December 3, 2014. Filed expert rebuttal report January 26, 2015.

- Testifying expert in <u>In Re MGM Mirage Securities, No. 2:09-cv-01558-GMN-VCF, United States District Court for the District of Nevada</u>. Filed expert report November 12, 2014. Deposition January 6, 2015.  Filed expert rebuttal report April 2, 2015.

- Testifying expert in <u>Adam S. Levy v. Thomas Gutierrez, Richard J. Gaynor, Raja Bal, J. Michal Conaway, Kathleen A. Cote, Ernest L. Godshalk, Matthew E. Massengill, Mary Petrovich, Robert E. Switz, Noel G. Watson, Thomas Wroe, Jr., Morgan Stanley & Co. LLC, Goldman, Sachs & Co., and Canaccord Genuity Inc. and Apple Inc., No. 1:14-cv-00443-JL, United States District Court for the District of New Hampshire</u>. Filed declaration January 7, 2015. Filed expert report September 20, 2018. Deposition December 7, 2018. Filed expert rebuttal report February 22, 2019. Filed expert report June 7, 2019. Deposition September 6, 2019.

- Testifying expert in <u>In Re Nu Skin Enterprises, Inc., Securities Litigation, Master File No. 2:14-cv-00033-DB, United States District Court for the District of Utah, Central Division</u>. Filed expert

report June 26, 2015. Deposition August 17, 2015.

- Testifying expert in <u>In Re Intuitive Surgical Securities Litigation, Master File No. 5:13-cv-01920-EJD, United States District Court for the Northern District of California</u>. Filed expert report September 1, 2015. Filed expert rebuttal report November 16, 2015. Filed expert report November 8, 2016. Filed expert report February 8, 2017. Deposition December 12, 2017.

- Testifying expert in <u>Babak Hatamian, et al., v. Advanced Micro Devices, Inc., et al., No. 4:14-cv-00226-YGR, United States District Court for the Northern District of California, San Francisco Division</u>. Filed expert report September 4, 2015. Filed expert rebuttal report December 7, 2015. Filed expert report November 18, 2016. Filed expert rebuttal report January 17, 2017. Filed declaration March 6, 2017. Deposition March 7, 2017.

- Testifying expert in <u>In Re NII Holdings, Inc. Securities Litigation, No. 1:14-cv-00227-LMB-JFA, United States District Court for the Eastern District of Virginia, Alexandria Division</u>. Filed expert report September 11, 2015. Deposition September 17, 2015. Filed expert rebuttal report October 28, 2015. Filed expert report January 8, 2016.

- Testifying expert in <u>In Re Barrick Gold Securities Litigation, No. 1:13-cv-03851-SAS, United States District Court for the Southern District of New York</u>. Filed expert report September 15, 2015.

- Expert declaration in <u>In Re Tower Group International, Ltd. Securities Litigation, Master Docket No. 1:13-cv-5852-AT, United States District Court for the Southern District of New York</u>. Filed declaration re: Plan of Allocation October 6, 2015.

- Testifying expert in <u>Beaver County Employees' Retirement Fund et al. v. Tile Shop Holdings Inc. et al., No. 0:14-cv-00786-ADM-TNL, United States District Court for the District of Minnesota</u>. Filed expert report December 1, 2015. Deposition March 15, 2016. Filed expert report July 1, 2016. Deposition July 26, 2016. Filed expert reply report August 15, 2016.

- Testifying expert in <u>In Re Barclays Bank PLC Securities Litigation, Civil Action No. 1:09-cv-01989-PAC, United States District Court for the Southern District of New York</u>. Filed expert report December 15, 2015. Filed expert rebuttal report February 2, 2016. Filed rebuttal reply expert report March 18, 2016. Deposition April 21, 2016.

- Testifying expert in <u>In Re Petrobras Securities Litigation, Civil Action No. 15-cv-03733-JSR, 15-cv-07615-JSR, 15-cv-6618-JSR, 15-cv-02192-JSR, United States District Court for the Southern District of New York</u>. Filed expert report May 6, 2016. Filed expert report May 27, 2016. Filed expert reply report June 17, 2016. Deposition June 24, 2016.

- Testifying expert in <u>In Re Genworth Financial, Inc. Securities Litigation, Civ. A. No. 3:14-cv-00682-JAG, United States District Court for the Eastern District of Virginia, Richmond Division</u>. Filed declaration re: Plan of Allocation June 2, 2016.

- Testifying expert in <u>Zubair Patel, Individually and on Behalf of All Others Similarly Situated, Plaintiff, vs. L-3 Communications Holdings, Inc., et al., Defendants, No. 1:14-cv-06038-VEC, United States District Court for the Southern District of New York.</u> Filed expert report June 30, 2016. Deposition July 20, 2016. Filed expert rebuttal report August 26, 2016.

- Testifying expert in <u>Leonard Howard, Individually and on Behalf of All Others Similarly Situated, Plaintiff, vs. Liquidity Services, Inc., et al., Defendants, No. 1:14-cv-01183-BAH, United States District Court for the District of Columbia.</u> Filed expert report September 2, 2016.

- Testifying expert in <u>James Quinn, Derivatively on Behalf of Nominal Defendant Apple REIT Ten, Inc., Plaintiff, v. Glade M. Knight, Justin Knight, Kent W. Colton, R. Garnett Hall, Jr., David J. Adams, Anthony F. Keating III, David Buckley, Kristian Gathright, David McKenney, Bryan Peery, and Apple Hospitality REIT, Inc., Defendants, and Apple REIT Ten, Inc., Nominal Defendant, No. 3:16-cv-610, United States District Court for the Eastern District of Virginia, Richmond Division.</u> Filed expert report October 14, 2016. Deposition October 20, 2016.

- Testifying expert in <u>Dr. Joseph F. Kasper, et al., Plaintiff, v. AAC Holdings, Inc., et al., Defendants, No. 3:15-cv-00923, United States District Court for the Middle District of Tennessee, Nashville Division.</u> Filed expert report October 18, 2016. Deposition November 29, 2016. Filed expert rebuttal report February 10, 2017. Filed expert report December 4, 2017.

- Testifying expert in <u>KBC Asset Management NV, et al., Plaintiff, v. 3D Systems Corporation, Abraham N. Reichental, Damon J. Gregoire, and Ted Hull, Defendants, No. 15-cv-02393-MGL, United States District Court for the District of South Carolina, Rock Hill Division.</u> Filed expert report October 31, 2016. Deposition January 5, 2017. Filed expert report April 21, 2017.

- Testifying expert in <u>Arkansas Teacher Retirement System, et al., Plaintiff, v. Virtus Investment Partners, Inc., Defendants, No. 15-cv-1249-WHP, United States District Court for the Southern District of New York.</u> Filed expert report November 7, 2016. Filed expert rebuttal report February 17, 2017. Deposition February 28, 2017. Filed expert report June 16, 2017. Filed expert rebuttal report July 26, 2017. Deposition August 9, 2017. Filed declaration re: prior reports December 4, 2017.

- Testifying expert in <u>Laborers Pension Trust Fund – Detroit, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, vs. Conn's, Inc., et al., Defendants, No. 4:14-cv-00548 (KPE), United States District Court for the Southern District of Texas, Houston Division.</u> Filed expert report November 10, 2016. Deposition December 9, 2016. Filed expert rebuttal report March 27, 2017.

- Testifying expert in <u>Glen Hartsock, individually and on behalf of all others similarly situated Plaintiff, v. Spectrum Pharmaceuticals, Inc., and Rajesh C. Shrotriya, Defendants, No. 16-cv-02279-RFB-GWF and Olutayo Ayeni, individually and on behalf of all others similarly situated Plaintiff, v. Spectrum Pharmaceuticals, Inc., Rajesh C. Shrotriya, Kurt A. Gustafson, Joseph Turgeon, and Lee Allen, Defendants, No. 16-cv-02649-KJD-VCF, United States District Court for the District of Nevada.</u> Filed declaration re: damages December 8, 2016.

- Testifying expert in In Re: ARIAD Pharmaceuticals, Inc. Securities Litigation, No. 1:13-cv-12544 (WGY), United States District Court District of Massachusetts. Filed expert report March 6, 2017.

- Testifying expert in Washtenaw County Employees' Retirement System, individually and on behalf of all others similarly situated, Plaintiff, v. Walgreen Co., Gregory D. Wasson, and Wade Miquelon, Defendants, No. 15-cv-3187, United States District Court for the Northern District of Illinois. Filed expert report April 21, 2017. Deposition June 15, 2017. Filed expert rebuttal report September 15, 2017. Filed expert report November 11, 2020. Filed expert rebuttal report December 14, 2020. Deposition January 29, 2021.

- Testifying expert in Lou Baker, individually and on behalf of all others similarly situated, Plaintiff, v. SeaWorld Entertainment, Inc., James Atchison, James M. Heaney, Marc Swanson, and The Blackstone Group L.P., Defendants, No. 3:14-cv-02129-MMA-KSC, United States District Court for the Southern District of California. Filed expert report May 19, 2017. Deposition July 20, 2017. Filed expert rebuttal report September 14, 2017. Filed expert report January 22, 2019. Filed expert rebuttal report March 1, 2019. Deposition March 26, 2019.

- Testifying expert in Benjamin Gross, individually and on behalf of all others similarly situated, Plaintiff, v. GFI Group, Inc., Colin Heffron, and Michael Gooch, Defendants, No. 3:14-cv-09438-WHP, United States District Court for the Southern District of New York. Filed expert report May 30, 2017. Filed expert report August 7, 2017. Filed expert rebuttal report August 28, 2017. Deposition September 27, 2017.

- Testifying expert in Murray Rubinstein, Jeffrey F. St. Clair, William McWade, Harjot Dev and Vikas Shah, individually and on behalf of all others similarly situated, Plaintiffs, v. Richard Gonzalez and Abbvie Inc., Defendants, No. 14-cv-9465, United States District Court for the Northern District of Illinois, Eastern Division. Filed expert report December 21, 2017. Deposition February 22, 2018. Filed supplemental expert report March 9, 2018. Filed expert reply report June 14, 2018. Filed expert sur-sur reply report August 28, 2018.

- Testifying expert in In Re: SanDisk LLC Securities Litigation, No. 3:15-cv-01455-VC, United States District Court for the Northern District of California, San Francisco Division. Filed expert report January 19, 2018. Deposition January 31, 2018. Filed expert report August 30, 2018. Filed expert report October 23, 2018. Deposition November 15, 2018. Filed declaration re: Plan of Allocation and calculation of aggregate damages May 6, 2019.

- Testifying expert in In Re: EZCORP, Inc. Securities Litigation, No. 1:15-cv-00608-SS, United States District Court for the Western District of Texas. Filed expert report January 31, 2018. Deposition March 6, 2018.

- Testifying expert in Kevin Murphy, Individually and On Behalf of All Others Similarly Situated, Plaintiff, v. Precision Castparts Corp., Mark Donegan, and Shawn R. Hagel, Defendants, No. 3:16-cv-00521-SB, United States District Court for the District of Oregon, Portland Division. Filed expert report March 2, 2018. Filed expert report March 22, 2019. Filed expert reply report June 19, 2019. Deposition July 19, 2019.

- Testifying expert in <u>In Re: Rent-A-Center, Inc. Securities Litigation, No. 4:16-cv-00978-ALM-CMC, United States District Court for the Eastern District of Texas, Sherman Division</u>. Filed expert report March 13, 2018. Filed rebuttal reply report July 12, 2018. Deposition August 21, 2018.

- Testifying expert in <u>Public Employees' Retirement Systems of Mississippi, Individually and On Behalf of All Others Similarly Situated, Plaintiff, v. TreeHouse Foods, Inc., Sam K. Reed, Dennis F. Riordan and Christopher D. Silva, Defendants, No. 1:16-cv-10632, United States District Court for the Northern District of Illinois</u>. Filed expert report July 13, 2018. Deposition September 21, 2018. Filed rebuttal reply report May 17, 2019.

- Testifying expert in <u>Gary Hefler, et al., Plaintiffs, v. Wells Fargo & Company, et al., Defendants, No. 1:16-cv-05479-JST, United States District Court for the Northern District of California</u>. Filed declaration re: Plan of Allocation July 27, 2018**.**

- Testifying expert in <u>In re Banco Bradesco S.A. Securities Litigation, No. 1:16-cv-04155-GHW, United States District Court for the Southern District of New York</u>. Filed expert report August 17, 2018. Filed supplemental expert report October 11, 2018. Deposition October 12, 2018. Filed expert report December 14, 2018. Filed expert report March 8, 2019. Filed declaration re: Plan of Allocation July 19, 2019.

- Testifying expert in <u>Richard Di Donato, et al., Plaintiffs, v. Insys Therapeutics Incorporated, et al. Defendants, No. CV-16-00302-PHX-NVW, United States District Court for the District of Arizona.</u> Filed expert report August 31, 2018. Deposition October 4, 2018. Filed expert report November 30, 2018. Filed expert report July 26, 2019. Filed expert report November 1, 2019.

- Consulting expert in <u>In Re: Wilmington Trust Securities Litigation, Master File No. 10-cv-00990-ER, United States District Court for the District of Delaware.</u> Filed declaration re: Plan of Allocation and calculation of aggregate damages September 17, 2018.

- Testifying expert in <u>Atul Singh Deora, Individually and On Behalf of All Others Similarly Situated, Plaintiffs, v. Nanthealth, Inc., Patrick Soon-Shiong, Paul A. Holt, Michael S. Sitrick, Kirck K. Calhoun, Mark Bennett, Edward Miller, Michael Blaszyk, Jefferies Llc, First Analysis Securities Corporation, Canaccord Genuity Inc., And Fbr Capital Markets & CO., Defendants., No. 2:17-CV-01825-BRO-MRW, United States District Court for the Central District of California Western Division.</u> Filed expert report September 20, 2018.

- Testifying expert in <u>City of Sunrise General Employees' Retirement Plan, Plaintiff vs. FleetCor Technologies, Inc., et al., Defendants, No. 1:17-CV-02207-LMM, United States District Court for the Northern District of Georgia Atlanta Division</u>. Filed expert report January 4, 2019. Deposition March 20, 2019. Filed expert report May 6, 2019.

- Testifying expert in <u>Guevoura Fund LTD., On Behalf of Itself and All Others Similarly Situated, Plaintiffs, v. Robert F.X. Sillerman, D. Geoffrey Armstrong, John Miller, Michael John Meyer, and SFX Entertainment, Inc., Defendants, Case No. 1:15-cv-07192-CM, Case No. 1:18-cv-09784-CM,</u>

United States District Court for the Southern District of New York. Filed expert report January 18, 2019.

- Testifying expert in <u>Leon D. Milbeck On Behalf of Himself and All Others Similarly Situated, v. TrueCar, Inc, et al., Defendants, No. 2:18-cv-02612-SVW, United States District Court for the Central District of California</u>. Filed expert report March 8, 2019. Deposition April 8, 2019.

- Testifying expert in <u>Lewis Cosby, Kenneth R. Martin, as Beneficiary of the Kenneth Ray Martin Roth IRA, and Martin Weakly On Behalf of Themselves and All Others Similarly Situated, vs. KPMG, LLP, Case No. 3:16-cv-00121, United States District Court for the Eastern District of Tennessee, Knoxville Division</u>. Filed expert report March 15, 2019. Deposition April 12, 2019. Filed supplemental expert report April 19, 2019. Deposition April 25, 2019. Filed rebuttal reply report June 14, 2019.

- Testifying expert in <u>Shawn Sanawaz, Individually and On Behalf of All Other Similarly Situated, v. Intellipharmaceutics International Inc., Isa Odidi, and Domenic Della Penna, Defendants, No. 1:17-cv-05761-JPO, United States District Court for the Southern District of New York.</u> Filed expert report May 06, 2019.

- Testifying expert in <u>Kevin L. Dougherty, Individually and on Behalf of All Others Similarly Situated, v. Esperion Therapeutics, Inc., et al., Defendants, No. 2:16-cv-10089-AJT-RSW, United States District Court for the Eastern Michigan of Michigan</u>. Filed expert report June 6, 2019. Deposition July 26, 2019. Filed rebuttal reply report October 7, 2019. Filed expert report May 15, 2020. Deposition July 31, 2020.

- Testifying expert in <u>West Virginia Investment Management Board, Stichting Blue Sky Global Equity Active Low Volatility Fund, and Stitching Blue Sky Active Large Cap Equity USA Fund vs. SCANA Corporation., et al., Civ. A. No. 3:17-cv-2616-MBS, United States District Court for the District of South Carolina.</u> Filed expert report June 28, 2019. Deposition August 16, 2019.

- Testifying expert in <u>Eric Weiner, Individually and on Behalf of All Others Similarly Situated, vs. Tivity Health, Inc., Donato Tramuto, Glenn Hargreaves and, Adam Holland, Defendants, Case No.: 3:17-cv-01469 United States District Court for the Middle District of Tennessee.</u> Filed expert report July 1, 2019. Deposition September 4, 2019. Filed rebuttal reply report December 20, 2019. Filed expert report July 30, 2020. Filed rebuttal reply report September 30, 2020. Deposition October 22, 2020.

- Testifying expert in <u>In Re Dr. Reddy's Laboratories Limited Securities Litigation, No. 3:17-cv-06436-PGS-DEA, United States District Court for the District of New Jersey.</u> Filed expert report July 19, 2019. Deposition September 10, 2019.

- Testifying expert in <u>Peace Officers' Annuity and Benefit Fund of Georgia, Individually and On Behalf of All Others Similarly Situated, and Jacksonville Police and Fire Pension Fund, Individually and On Behalf of All Others Similarly Situated vs. DaVita, Inc. et al., No. 1:17-cv-00304-WJM-NRN, United States District Court for the District of Colorado.</u> Filed expert report January 31, 2020. Deposition May 27, 2020.

- Testifying Expert in <u>In Re Avon Securities Litigation, No. 19 Civ. 01420- CM, United States District Court for the Southern District of New York.</u> Filed expert report February 13, 2020.

- Testifying Expert in <u>In Re Allergan Generic Drug Pricing Securities Litigation, Civil Action No. 2:16-9449 (KSH) (CLW), United States District Court for the District of New Jersey</u>. Filed expert report March 20, 2020. Deposition July 16, 2020. Filed expert reply report November 25, 2020.

- Expert declaration in <u>Martin Cohen, Individually and On Behalf of All Others Similarly Situated, v. Luckin Coffee Inc., Jenny Zhiya Qian, and Reinout Hendrik Schakel, Case no. 1:20-cv-01293-LJL, United States District Court for the Southern District of New York</u>. Filed declaration May 13, 2020.

- Testifying Expert in <u>In RE Navient Corporation Securities Litigation, No. 1:17-cv-08373-RBK-AMD, United States District Court of New Jersey.</u> Filed expert report May 15, 2020. Deposition July 23, 2020. Filed declaration August 21, 2020. Filed expert report April 16, 2021. Deposition June 3, 2021.

- Testifying Expert in <u>Yellowdog Partners, LP, Individually and on Behalf of All Others Similarly Situated, vs. CURO Group Holdings Corp., *et al*., Civil Action No. 2:18-cv-02662-JWL-KGG, United States District Court for the District of Kansas, Kansas City.</u> Filed expert report May 18, 2020.

- Testifying Expert in <u>Julian Keippel, Individually and On Behalf of All Others Similarly Situated, vs. Health Insurance Innovations, Inc., Gavin Southwell, and Michael D. Hershberger, No. 8:19-CV-00421-WFJ-CPT, United States District Court Middle District of Florida Tampa Division.</u> Filed expert report May 21, 2020. Deposition June 15, 2020.

- Testifying Expert in <u>In Re Perrigo Company plc Securities Litigation, No: 1:19-cv-00070-DLC, United States District Court for the Southern District of New York.</u> Filed expert report July 10, 2020. Deposition August 4, 2020. Filed expert report October 6, 2020. Filed expert rebuttal reply report December 4, 2020. Deposition March 4, 2021.

- Testifying Expert in <u>Plymouth County Retirement System, Individually and On Behalf of All Others Similarly Situated, vs. GTT Communications, Inc., Richard D. Calder, Jr., Chris Mckee, Michael Sicoli, And Gina Nomellini, Case No. 1:19-cv-00982-CMH-MSN, United States District Court for the Eastern District of Virginia Alexandria Division.</u> Filed expert report August 7, 2020. Filed expert report September 25, 2020.

- Testifying Expert in <u>Thomas W. Luczak, Individually and On Behalf of All Others Similarly Situated, vs. National Beverage Corp., Nick A. Caporella, and George R. Bracken, Case No. 0:18-cv-61631-KMM, United States District Court for the Southern District of Florida.</u> Filed expert report September 25, 2020. Deposition November 5, 2020.

- Expert declaration in <u>In re: PG&E Corporation – and – Pacific Gas and Electric Company Debtors, Case No. 19-30088 (DM), United States Bankruptcy Court for the Northern District of California, San Francisco Division.</u> Filed declaration September 28, 2020.

- Testifying Expert in <u>Oklahoma Police Pension Fund and Retirement System, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. Teligent, Inc. and Jason Grenfell-Gardner, Defendants, Case No. 1:19-cv-03354-VM, United States District Court for the Southern District of New York</u>. Filed expert report September 30, 2020. Deposition March 11, 2021.

- Testifying Expert in <u>John Utesch, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. Lannett Company, Inc., Arthur P. Bedrosian, and Martin P. Galvan, Defendants, Civil Action No. 2:16-cv-05932-WB, United States District Court for the Eastern District of Pennsylvania</u>. Filed expert report October 1, 2020. Deposition December 10, 2020. Filed expert rebuttal report on May 13, 2021. Hearing testimony July 27, 2021.

- Testifying Expert in <u>City of Warren Police and Fire Retirement System, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. World Wrestling Entertainment, Inc., Vincent K. McMahon, George A. Barrios and Michelle D. Wilson, Defendants, Civil Action No. 1:20-cv-02031-JSR, United States District Court for the Southern District of New York.</u> Filed expert report on October 6, 2020. Deposition October 14, 2020.

- Testifying Expert in <u>Employees' Retirement System of the Puerto Rico Electric Power Authority, Individually and on Behalf of All Others Similarly Situated, Plaintiff, vs. Conduent Inc., Ashok Vemuri, and Brian Webb-Walsh, Defendants, Case No. 2:19-cv-08237-SDW, United States District Court for the District of New Jersey.</u> Filed expert report on December 7, 2020. Deposition December 22, 2020.

- Testifying Expert in <u>The Police Retirement System of St. Louis, Individually and On Behalf of All Others Similarly Situated, Plaintiff, v. Granite Construction Incorporated, James H. Roberts, Jigisha Desai, and Laurel J. Krzeminski, Defendants, Case No. 3:19-cv-04744-WHA, United States District Court for the Northern District of California.</u> Filed expert report on November 25, 2020. Filed declaration re: Plan of Allocation May 25, 2021.

- Testifying Expert in <u>Plumbers & Pipefitters National Pension Fund and Juan Francisco Nieves, as Trustee of the Gonzalez Coronado Trust, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, v. Kevin Davis and Amir Rosenthal (Performance Sports Group Ltd.), Defendants, Case No.: 1:16-CV-3591-GHW, United States District Court for the Southern District of New York.</u> Filed expert report on December 18, 2020. Deposition February 5, 2021. Filed expert rebuttal report on April 6, 2021.

- Testifying Expert in <u>Mayuko Holwill, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. AbbVie Inc., Richard A. Gonzalez, and William J. Chase, Defendants, Case No. 1:18-cv-6790, United States District Court for the Northern District of Illinois.</u> Filed expert report on February 1, 2021. Filed expert rebuttal report on September 20, 2021.

- Testifying Expert in <u>Oklahoma Firefighters Pension and Retirement System, Individually and on Behalf of All Others Similarly Situated, Plaintiff, vs. Newell Brands Inc., Michael B. Polk, John K. Stipancich, Scott H. Garber, Bradford R. Turner, Michael T. Cowhig, Thomas E. Clarke, Kevin C. Conroy, Scott S. Cowen, Domenico De Sole, Cynthia A. Montgomery, Christopher D. O'Leary, Jose Ignacio Perez-Lizaur, Steven J. Strobel, Michael A. Todman, and Raymond G. Viault, Defendants, Case No: HUD-L-3492-18, Superior Court of New Jersey Law Division (Hudson County).</u> Filed expert report on May 3, 2021. Filed expert rebuttal report on June 15, 2021. Deposition July 21, 2021.

- Testifying Expert in <u>Carmignac Gestion, S.A., Mason Capital L.P., et al., Pentwater Equity Opportunities Master Fund LTD., et al., First Manhattan Co., Nationwide Mutual Funds, on behalf of its series Nationwide S&P 500 Index Fund, et. al., WCM Alternatives: Event-Driven Fund, et al., Hudson Bay Master Fund LTD., et al., Schwab Capital Trust on behalf of its series Schwab S&P 500 Index Fund, et al., Sculptor Master Fund, LTD. f/k/a OZ Master Fund, Ltd., et al., Aberdeen Canada Funds – Global Equity Fund, a series of Aberdeen Canada Funds, et al., Discovery Global Citizens Master Fund, LTD., et al., York Capital Management, L.P., et al., Burlington Loan Management DAC, Universities Superannuation Scheme LTD., Principal Funds, Inc., et al., Kuwait Investment Authority et al., Blackrock Global Allocation Fund Inc., et al., Plaintiffs, vs. Perrigo Company PLC, et al, Defendants, Civil Action No(s): 17-10467 (MCA) (LDW), 18-1119 (MCA) (LDW), 18-1121 (MCA) (LDW), 18-2291 (MCA) (LDW), 18-15382 (MCA) (LDW), 18-16204 (MCA) (LDW), 18-16206 (MCA) (LDW), 19-3973 (MCA) (LDW), 19-4900 (MCA) (LDW), 19-6560 (MCA) (LDW), 19-21502 (MCA) (LDW), 19-21732 (MCA) (LDW), 20-1484 (MCA) (LDW), 20-2262 (MCA) (LDW), 20-2410 (MCA) (LDW), 20-3431 (MCA) (LDW), 20-4748 (MCA) (LDW), United States District Court for the District of New Jersey.</u> Filed expert report on June 23, 2021. Filed expert report on September 29, 2021. Deposition October 26, 2021.

- Testifying Expert in <u>In Re Nielsen Holdings PLC Securities Litigation, Case No. 18-CV-07143-JMF, United States District Court Southern District of New York</u>. Filed expert report on July 14, 2021. Deposition September 30, 2021.

- Testifying Expert in <u>Allegheny County Employees Retirement System et al. v. Energy Transfer LP et al., Case No. 2:20-cv-00200-GAM, United States District Court for the Eastern District of Pennsylvania</u>. Filed expert report on September 17, 2021.

- Testifying Expert in <u>Julia Junge and Richard Junge et al. v. Geron Corporation et al., Case No. 3:20-cv-00547-WHA, United States District Court for the Northern District of California, San Francisco Division</u>. Filed expert report on September 30, 2021. Deposition October 15, 2021.

- Testifying Expert in <u>In Re MINDBODY, Inc. Securities Litigation, Civil Action No. 1:19-cv-08331-VEC, United States District Court Southern District of New York</u>. Filed expert report on October 15, 2021.

- Testifying Expert in <u>Plymouth County Retirement System and Oklahoma Police Pension and Retirement System, Individually and On Behalf of All Others Similarly Situated, v. Evolent Health, Inc., Frank Williams, Nicholas McGrane, Seth Blackley, Christie Spencer, and Steven</u>

Wigginton, Case No. 1:19-cv-01031-RDA-TCB, United States District Court Eastern District of Virginia, Alexandria Division. Filed expert report on October 19, 2021.

- Testifying Expert in In re Uniti Group Inc. Securities Litigation, Case No. 4:19-cv-00756-BSM, United States District Court Eastern District of Arkansas, Central Division. Filed expert report on October 25, 2021.

- Testifying Expert in David Kanefsky, Individually and On Behalf of All Others Similarly Situated, v. Honeywell International Inc., Darius Adamczyk, and Thomas A. Szlosek, Civ. No. 2:18-15536-WJM, United States District Court for the District of New Jersey. Filed expert report on November 1, 2021.

Experience in Labor Economics and Discrimination-Related Cases:

- Expert consultant for Cargill in class action race discrimination matter in which class certification was defeated.

- Expert consultant for 3M in class action age discrimination matter.

- Expert consultant for Wal-Mart in class action race discrimination matter.

- Expert consultant on various other significant confidential labor economics matters in which there were class action allegations related to race, age and gender.

- Expert consultant for large insurance company related to litigation and potential regulation resulting from the use of credit scores in the insurance underwriting process.

**Testimony:**

- Testifying expert in Shirley Cohens v. William Henderson, Postmaster General, C.A 1:00CV-1834 (TFH) United States Postal Service. United States District Court for the District of Columbia.– Filed report re: lost wages and benefits.

- Testifying expert in Richard Akins v. NCR Corporation.  Before the American Arbitration Association – Filed report re: lost wages.

- Testifying expert in Maureen Moriarty v. Dyson, Inc., Case No. 09 CV 2777, United States District Court for the Northern District of Illinois, Eastern Division. Filed expert report October 12, 2011. Deposition November 10, 2011.

- Testifying expert in Vincent Torbio, et al. against Feldor Billiards Inc. D/B/A Fatcat Billiards, et al., Index No. 153384/14, Supreme Court of the State of New Your, County of New York. Filed expert report May 29, 2018. Deposition July 24, 2018.

Selected Experience in Antitrust, General Damages, and Other Matters:

- Expert consultant in high-profile antitrust matters in the computer and credit card industries.

- Expert consultant for plaintiffs in re: Brand Name Drugs Litigation.  Responsible for managing, maintaining and analyzing data totaling over one billion records in one of the largest antitrust cases ever filed in the Federal Courts.

- Served as neutral expert for mediator (Judge Daniel Weinstein) in allocating a settlement in an antitrust matter.

- Expert consultant in Seminole County and Martin County absentee ballot litigation during disputed presidential election of 2000.

- Expert consultant for sub-prime lending institution to determine effect of alternative loan amortization and late fee policies on over 20,000 customers of a sub-prime lending institution. Case settled favorably at trial immediately after the testifying expert presented an analysis I developed showing fundamental flaws in opposing experts calculations.


**TEACHING EXPERIENCE:**

KNOX COLLEGE, Teaching Assistant - Statistics, (1995)
KNOX COLLEGE, Tutor in Mathematics, (1992 - 1993)


**PUBLICATIONS:**

Coffman, Chad and Mary Gregson, "Railroad Construction and Land Value."  *Journal of Real Estate and Finance*, 16:2, pp. 191-204 (1998).

Coffman, Chad, Tara O'Neil, and Brian Starr, Ed. Richard D. Kahlenberg, "An Empirical Analysis of the Impact of Legacy Preferences on Alumni Giving at Top Universities," *Affirmative Action for the Rich: Legacy Preferences in College Admissions*; pp. 101-121 (2010).


**PROFESSIONAL AFFILIATIONS:**

Associate Member CFA Society of Chicago
Associate Member CFA Institute
Phi Beta Kappa


**AWARDS:**

1994  Ford Fellowship Recipient for Summer Research.
1993  Arnold Prize for Best Research Proposal.
1995  Knox College Economics Department Award.

**PERSONAL ACTIVITIES:**

- Pro bono consulting for Cook County State's Attorney's Office.
- Pro bono consulting for Cook County Health & Hospitals System – Developed method for hospital to assess real-time patient level costs to assist in improving care for Cook County residents and prepare for implementation of Affordable Care Act.
- Pro bono consulting for Chicago Park District to analyze economic impact of park district assets and assist in developing strategic framework for decision-making.